Leo Ernest JENKINS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 71,040.

Court of Criminal Appeals of Texas, En Banc.

May 5, 1993.

Opinion on Grant of Reconsideration Oct. 11, 1995.

Floyd W. Freed, III and Kurt B. Wentz, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Kimberly Aperauch Stelter, Mark Vinson & Andy Tobias, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

## OPINION

MALONEY, Judge.

Appellant was convicted of capital murder pursuant to Texas Penal Code Section 19.03(a)(2). The jury made affirmative findings on the two special issues submitted to it and the trial court imposed the sentence of death. This case comes to us on direct appeal. Tex.Code Crim.Proc.Ann. art. 37.071 § 2(h). We will reverse based upon our disposition of appellant's points of error seventeen, eighteen and nineteen,[1] and address

---

1. Appellant's points of error seventeen, eighteen and nineteen are as follows:

**Point of Error Number 17**

The trial court erred in not striking the testimony of Larry Bitter or granting a mistrial because of the failure of Mr. Bitter to produce statements previously prepared by himself relating to his testimony.

**Point of Error Number 18**

The trial court denied the Appellant his right to confront the witnesses against him and due process of law under the Fifth and Fourteenth Amendments to the United States Constitution when it refused to order the witness Larry Bitter to produce statements previously prepared by himself that related to his testimony.

**Point of Error Number 19**

The trial court denied the Appellant his right to confront the witnesses against him and due process of law under ARTICLE 1, SEC. 10 and SEC. 19, TEXAS CONSTITUTION, when it refused to order the witness Larry Bitter to pro-

point of error thirteen, challenging the sufficiency of the evidence.

In point of error thirteen appellant challenges the sufficiency of the evidence to sustain an affirmative finding on the second special issue, whether there is "a probability that [appellant] would commit criminal acts of violence that would constitute a continuing threat to society[.]" A discussion of the facts relevant to this issue is necessary. The evidence at trial established that in the early afternoon of August 29, 1988, appellant and accomplice Eugene Hart entered the Golden Nugget Pawn Shop in Harris County, Texas, shot the two clerks on duty, stole jewelry and money and fled on foot. Evidence connecting appellant and Hart to the scene led to their arrests the next day. After his arrest, appellant directed police officers to the locations where he had thrown the pistol used in committing the offense and the spent shells from the pistol. In a written confession appellant confessed that he was the triggerman in both shootings. Appellant further stated that he had initiated the plan to rob the pawn shop and had solicited Hart's involvement. Appellant stated that "[Hart] and I had already made up our minds that when we jacked (Robbed) the place we were going to have to kill whoever was there because we did not want to be identified."

At punishment, the State introduced evidence of appellant's two prior burglary convictions and appellant's military records reflecting his discharge "Under Other Than Honorable Conditions" due to frequent misconduct. Appellant's prison records were also introduced, evidencing repeated reports of misconduct, primarily relating to appellant's refusal to work. In addition, psychologist, Dr. Michael Field, testified for the State that he had diagnosed appellant as having an antisocial personality disorder. Field testified that appellant was not subject to rehabilitation and would constitute a continuing threat to society. While in prison appellant confided in a fellow inmate, James Jackson, that he planned to "eliminate" his cohort Hart, who was also in prison, by poison. Jackson testified that appellant wanted him to contact a kitchen worker who would be able to facilitate appellant's plan. Appellant also told Jackson that he had wanted to kill Hart immediately after committing the offense, but had not had the opportunity. Appellant argues that while his military and prison records were not exemplary, the infractions were of a passive nature. Appellant further contends that the State's psychological evidence was faulty because it was based upon a twenty minute interview conducted while appellant was incarcerated some six years prior to the commission of the instant offense. Appellant also introduced letters and poems that he had written for the purpose of showing that he was remorseful.

In reviewing the sufficiency of the evidence to sustain the jury's affirmative finding on a special issue, we consider whether that evidence, viewed in the light most favorable to the verdict, would lead any rational trier of fact to the same conclusion beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Fuller v. State*, 827 S.W.2d 919, 934 (Tex.Crim.App. 1992), *cert. filed* (June 23, 1992). In reaching a verdict on the special issues, the jury is allowed to consider evidence introduced at both stages of the trial. *Miniel v. State*, 831 S.W.2d 310, 322 (Tex.Crim.App.), *cert. denied*, 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). The circumstances of the offense alone, if sufficiently heinous, can suffice to support the jury's verdict. *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Crim.App. 1987); *Johnson v. State*, 853 S.W.2d 527, 531 (Tex.Crim.App.1992). In addition to the crime itself, the jury may consider factors such as whether the accused was acting in concert with others, his state of mind at the time, the calculated nature of the acts culminating in the offense, forethought and deliberation preceding the murder, the accused's age, prior criminal history, psychiatric evidence and character evidence. *See, e.g., Keeton*, 724 S.W.2d at 61; *Vuong v. State*, 830 S.W.2d 929, 934–35 (Tex.Crim.App.), *cert. denied*, 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992).

duce statements previously prepared by him-

self that related to his testimony.

Viewed in the light most favorable to the decision made by the jury, we hold the evidence sufficient to support the jury's affirmative finding on the second special issue beyond reasonable doubt. *First v. State*, 846 S.W.2d 836 (Tex.Crim.App.1992). The offense, while not sufficiently heinous alone to justify an affirmative finding on the second issue, is probative of appellant's future conduct. The robbery and the murders were planned with forethought and put into calculated operation. Appellant admittedly planned, prior to committing the offense, to kill anyone who might be in the store in order to avoid an identification. Both unarmed clerks were shot at close range and without provocation as part of appellant's pre-devised scheme. These circumstances, together the other evidence elicited by the State at the punishment phase of trial, including evidence of appellant's plans to kill his accomplice, appellant's prior criminal history, poor military and prison records and the psychologist's testimony that appellant could not be rehabilitated support the jury's affirmative finding on the second special issue. Point of error thirteen is overruled.

In points of error seventeen, eighteen and nineteen, appellant complains of the trial court's failure to compel a State's witness to produce certain reports which related to his testimony. Appellant claims that the trial court's actions violated Texas Rule of Criminal Evidence 614 and that appellant was thereby denied his right of confrontation and due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 19 of the Texas Constitution.

During the punishment phase of trial Larry Bitter, a narcotics investigator with the Texas Department of Corrections (TDC), testified as a State's witness about the importation of drugs into TDC and their widespread use by inmates.[2] Following are excerpts of that testimony:

Q. [Prosecutor] What does your job consist of?

A. [Bitter] We're responsible for the investigation of allegations of narcotics traffic primarily within the prison system.

\* \* \* \* \* \*

Q. Are there narcotics found inside TDC? [objection omitted]

A. Yes, sir, there are. [objection omitted]

Q. Are narcotics available to inmates of the Texas Department of Corrections? [objection omitted]

A. Yes, sir.

\* \* \* \* \* \*

Q. Have you found drugs in possession of any inmates at the Department of Corrections? [objection omitted]

A. Yes, sir, we have.

Q. What type of drugs have you found on inmates in the Texas Department of Corrections?

A. Everything. Heroin, marijuana, cocaine, LSD; all drugs that are available in the free world we have found on inmates.

Q. Do you know how those drugs get in?

A. Yes, sir. There are a variety of different ways.

Q. ... What various ways have you found drugs get into the Texas Department of Corrections? [objection omitted]

A. Through officers and employees, civilians who come to visit on weekends, through the mail. ... there are a series of different ways to get it in through the mail. We've had LSD that has been

2. Appellant objected to Bitter's testimony as irrelevant to the special issues and highly prejudicial. Appellant was granted a running objection. In points of error fourteen and fifteen, appellant challenges the court's overruling of his objections to the admissibility of Bitter's testimony. Because we dispose of this case on the basis of points of error seventeen, we do not address the issue of relevancy. However, by holding that the reports should have been produced under Rule 614 we do not mean to imply that Bitter's testimony was relevant. We hold only that where testimony such as Bitter's is admitted, reports such as those sought should be produced if requested under Rule 614.

placed behind a postage stamp on an envelope. We have seen it coming in that way.

Q. Are you talking about small amounts, or what is the largest amount of drugs you've found on an inmate in the Texas Department of Corrections?

A. We have seized in excess of a half a pound of marijuana. We have seized in excess of an ounce of cocaine.

Q. How do they ingest the drugs that are ingested? Do they use syringes or what?

A. Each unit houses an infirmary. In the course of business, the infirmary has syringes and hypodermic needles, and because the way the prison is run, inmates are allowed access to nearly every portion of the prison. They are able to sometimes steal syringes, and sometimes officers will bring in syringes as part of what he does for inmates. So they dig them out of the trash cans; as medical personnel throw them away, they use syringes.

\* \* \* \* \* \*

Q. Would the fact that a person may have been to the penitentiary on at least two occasions, would that person have a better understanding of how to obtain drugs in the penitentiary?

[objection omitted]

3. In addition, three days prior to the punishment phase of trial, appellant filed a motion requesting that the State's witnesses be compelled to bring with them all reports "that they made in connection with the subject matter of their testimony" as well as reports "that such witness relied upon to form the basis of his expert opinion or lay opinion in in [sic] the case." The record reflects that the motion was granted on the day it was filed. Because we dispose of appellant's complaint under Rule 614, we need not address the issues raised with respect to appellant's motion.

4. After his initial request for the production of the reports was denied, appellant argued:

I bring Rule 614 from the Texas Rules of Criminal Evidence to bear and also the fact that the Court has already granted an order that they bring all those reports with them.

The court then stated that any reports specifically relating to appellant were to be produced, but no other reports. Appellant questioned the court's ruling:

A. Yes, sir, he would.

Q. The fact that a person is confined to the Texas Department of Corrections, would that automatically cut the availability of any controlled substance or dope to him or her?

A. No, sir.

On cross-examination Bitter stated that as part of his job he made reports and findings of his investigations of drug importation into the TDC. Thereupon, appellant requested that he be given those reports for purposes of further cross-examination pursuant to Rule of Criminal Evidence 614.[3] The trial judge ordered the production of reports that specifically concerned appellant, but denied appellant's request with respect to any other report. Appellant objected that the court's ruling was in violation of appellant's confrontation and due process rights, and was contrary to Rule 614.[4] Appellant's objections were overruled. Appellant requested that the reports be produced for purposes of the record on appeal. This request was denied.

Texas Rule of Criminal Evidence 614(a) provides that:

After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for

The Court is saying that if this witness has done an investigation of [appellant], that I'm entitled to see that report, but all these other things that he testified to to [sic] this jury are relevant to the issue of punishment and I don't have a right to get those reports to look at; is that correct, Your Honor?

The court did not change its ruling and appellant further objected:

I would object to the Court denying the Defendant's right to confront and cross-examine his accusers which is guaranteed by the Sixth Amendment to the United States Constitution, the right of due process given by the Fourteenth Amendment to the Constitution, and the state's constitution. It further violates specifically Rule 614 of the Rules of Criminal Evidence that state that you have the right to see the report that the witness has relating to the subject matter concerned with what the witness testified to.

The court overruled appellant's objections as "a very broad interpretation of Rule 614."

the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

TEX.R.CRIM.EVID. 614(a). Rule 614 derives from the common law rule set forth in our decision in *Gaskin v. State*, 172 Tex. Crim. 7, 353 S.W.2d 467 (App.1961).[5] HULEN D. WENDORF, ET AL, TEXAS RULES OF EVIDENCE MANUAL at VI-106 (3rd ed. 1991). Because we have never before interpreted the scope and application of Rule 614, it is appropriate to look to our interpretation of the *Gaskin* rule for guidance. Moreover, as Rule 614 is substantively similar to the federal Jencks Act, 18 U.S.C. § 3500, federal caselaw may also be helpful.[6]

Material subject to Rule 614 must "relate[ ] to the subject matter concerning which the witness has testified." TEX.R.CRIM. EVID. 614(a). The State argues that appellant's request far exceeds the scope of material discoverable under the Rule.[7] A recent federal decision, *United States v. Roark*, 924 F.2d 1426 (8th Cir.1991), which applied the federal rule to facts comparable to those here is persuasive.

In *Roark*, the defendant, a member of the Hells Angels Motorcycle Club, was indicted for various drug-related offenses. *Id.* at 1427. The government called DEA agent Heald, who had no involvement in the offense or with the defendant, to testify as an expert on the Hells Angels organization. *Id.* at 1430. Heald testified that he had visited at least one hundred of the Hells Angels' methamphetamine labs and had written reports about the illegal drug activities of the Hells Angels, including operation of the labs. The government also called Anthony Tait, an agent who had worked undercover as a Hells Angel. Tait testified that he had made hundreds of tapes in relation to his activities with the Hells Angels, including the defen-

---

5. In *Gaskin,* the defendant sought the production of offense reports prepared by arresting officers who testified for the State. *Gaskin,* 353 S.W.2d at 468. Holding that it was error for the trial court to fail to compel production of the reports, we created a new rule entitling a defendant to the production of:

> a previous statement shown by the evidence to have been made by a witness who has testified for the state, which statement was available and inspection was requested for the purpose of cross-examination and possible use for impeachment purposes.

*Id.* at 469. Such a statement was subject to production "whether the statement has been used by the witness before trial to refresh his memory or not." *Id.*

6. The federal rule provides, in relevant part:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified ... 18 U.S.C. § 3500(b). The federal statute is a derivative of the common law rule set forth in the United States Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). In creating the rule set forth in *Gaskin* we "disclaim[ed] any intent to adopt the Jencks decision", *Gaskin*, 353 S.W.2d at 469; however, we later acknowledged that the *Gaskin* rule "parallels the Jencks rule", *Sewell v. State*, 367 S.W.2d 349, 351 (Tex.Crim.App.1963) (op. on reh'g).

The Jencks Act was incorporated into the Federal Rules of Criminal Procedure as Rule 26.2. *United States v. Shyres*, 898 F.2d 647, 657 n. 4 (8th Cir.), *cert. denied* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990) (Rule 26.2 reads virtually verbatim to Rule 614).

7. Specifically, the State argues:

> ... Rule 614 cannot be interpreted to require Bitter to produce every report he had ever seen or made regarding drug activity at T.D.C.J.I.D. ... Bitter gave no specifics about any particular case, nor gave any indication that his testimony was based on the review of any reports. Rather, his testimony was simply that drugs were available in prison. By analogy, an officer who testified that in his experience, a particular area of town was a high crime area need not bring in every offense report ever filed in that area of town. Nor would an officer who testified that he has often seen cocaine packaged in small plastic baggies be required to bring in every offense report in which he found cocaine packaged in small baggies.

We disagree with the State's analogies. The State asserts in its brief that Bitter's testimony was given for the specific purpose of making implications about appellant's drug use and future conduct, as relevant to the second special issue. To the extent that an officer's testimony about a high crime area of town or the packaging of cocaine does not bear directly on a punishment issue to be decided by the jury, it is not analogous to Bitter's testimony.

dant's particular chapter of the organization. The defendant requested production of Heald's reports and Tait's tapes pursuant to the Jencks Act. *Id.* at 1431. The district court refused to compel production of any of the documents requested relating to Heald's or Tait's testimony sustaining the government's objection that the material sought was too voluminous.[8] *Id.* at 1431. However, at the close of trial, the district court instructed the jury that the testimony of both Heald and Tait was struck from the record and that they were not to consider that testimony as it "in no way proves that defendant is guilty of the crimes with which he is charged." *Id.* at 1432.

Addressing the district court's concerns about the volume of the material sought, the Court of Appeals for the Eighth Circuit noted that the Jencks Act did not restrict production of relevant material simply because the material is or might be voluminous. *Id.* at 1431. The court further stated that when the government challenges the relevancy of requested material, the trial judge has an affirmative duty to inspect those materials *in camera*. The court held that the failure to compel production of the requested materials either to appellant or to the court for an *in camera* inspection amounted to reversible error and was not cured by the jury instruction to disregard the witnesses' testimony. *Id.* at 1432–34.

The testimony of Bitter and the reports sought in the instant case are remarkably similar in nature to the testimony of Heald and Tait and the material sought in *Roark*. In *Roark*, Heald had no involvement in the case or with the defendant. Heald's testimony pertained to the Hell's Angels in general and to offenses committed by the Hell's Angels which did not involve the defendant. The reports sought described offenses which did not involve the defendant. Although

some of Tait's testimony pertained to activities of the Hell's Angels' chapter to which the defendant belonged, most of his testimony related to matters which did not involve the defendant. In the instant case, Bitter's testimony pertained to drug offenses in the TDC in general. None of Bitter's testimony indicated that he had any involvement in the investigation of the instant offense or with appellant, apart from testifying in appellant's trial. As in *Roark*, it appears from the record here that the reports sought described offenses which did not involve appellant.[9] We hold that the trial court erred in refusing to compel production of the reports, at least in order to conduct an *in camera* inspection as to their relevance to Bitter's testimony. *See Roark*.

The State argues that production of the reports should not be compelled because the task "would be extremely onerous" and "herculean". This argument is without merit as Rule 614 does not exclude production of materials that are or might be voluminous. *See id.* at 1431. Although the State further argues that appellant's request exceeds the scope of Rule 614, the Rule is extremely broad, providing that the trial court "shall" compel production of "*any* statement ... that relates to the subject matter concerning which the witness has testified." (emphasis added). The State cites no authority in support of its contention that the Rule was not intended to extend to reports of the type sought by appellant.

The State also argues that the reports were not "statements" within the meaning of Rule 614 and were not subject to production because they were not in Bitter's "possession".[10] We reject these contentions. Bitter's testimony was that he personally prepared the reports based upon his investigatory findings. These reports were state-

8. As to the tapes made by Tait, the State estimated that there were 200 to 300 tapes, running approximately 500 hours of time, and located in a number of different states throughout the country.

9. Bitter's testimony concerned drugs in the "possession of inmates" in general. Bitter testified that "as an investigator [with TDC] ... [he made] reports of [his] findings and investiga-

tions." There was no testimony as to whether any of the reports made by Bitter pertained to offenses involving appellant.

10. Specifically, the State says in its brief that "it appears from the record that these reports were in the custody of [TDC] and that Mr. Bitter did not have these reports in his possession."

ments under Rule 614.[11] *See, e.g., Campos v. State,* 468 S.W.2d 81, 83 (Tex.Crim.App. 1971) (police officers' offense reports are discoverable statements under *Gaskin*); *Darrington v. State,* 493 S.W.2d 244, 245 (Tex.Crim.App.1973) (officer's offense report was "statement" subject to Gaskin rule); 22 TEX.JUR.3d *Criminal Law* § 2446 (1982) (describing *Gaskin* Rule as applicable where state's witness has "made a report or given a statement"); *see also United States v. Welch,* 810 F.2d 485, 490 (5th Cir.), *cert. denied,* 484 U.S. 955, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987) (investigation reports can be "statement" under Jencks Act); *Lewis v. United States,* 340 F.2d 678, 682 (8th Cir.1965) (well-settled that notes and reports made in course of criminal investigation are "statements" under Jencks).

As to the issue of possession, the State's interpretation is overly narrow, essentially requiring physical possession in the courtroom. We think a more reasonable view is that a statement is in the "possession" of a witness if it is within his control or is readily accessible to him. *See United States v. Heath,* 580 F.2d 1011, 1018, 1018 n. 1 (10th Cir.1978), *cert. denied* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979) (where there was close cooperation between local police and federal prosecutor, federal prosecutor cannot "stand on technicality and say that he does not have actual possession" of the statement held by local authorities); *Augenblick v. United States,* 377 F.2d 586, 597–98, 180 Ct.Cl. 131 (1967) ("statement" under Jencks Act "need not be within the physical control of the prosecution to be 'in possession'), *rev'd on other grounds,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *see also United States v. Durham,* 941 F.2d 858, 861 n. 3 (1991) (where federal authorities did not participate in a joint effort with local authorities, federal government did not have "possession" of statements taken by local authorities). Although the record is not well-developed as to Bitter's control over or access to the reports at issue, as a narcotics investigator for TDC, it is reasonable to assume that Bitter was in control of and had access to

reports prepared by him in the exercise of his investigative duties. Moreover, we think it reasonable that when a defendant requests the production of a statement under Rule 614, the State bears the burden, as the party contesting production, to show why the statement should not or cannot be produced. *See United States v. Augenblick,* 393 U.S. 348, 355–56, 89 S.Ct. 528, 533–34, 21 L.Ed.2d 537 (1969) (government properly bears burden of explaining why statements under Jencks Act could not be produced); *Moore v. United States,* 353 A.2d 16, 19 (D.C.1974) (under Jencks Act burden of explaining why material can't be produced is on government). Here, the State failed to show that the witness did not have control of or access to the reports. In the absence of evidence to the contrary, we hold the reports were in Bitter's "possession" within the meaning of Rule 614.

Violation of Rule 614 results in reversal unless the error is shown to be harmless. *See* TEX.R.APP.PROC. 81(b)(2). This principle applied to violations of the common law *Gaskin* rule as well. *See, e.g., Pinson v. State,* 598 S.W.2d 299, 300–01 (Tex.Crim.App. 1980); *Hoffman v. State,* 514 S.W.2d 248, 253 n. 5 (Tex.Crim.App.1974); *Campos v. State,* 468 S.W.2d 81, 84 (Tex.Crim.App.1971). Under *Gaskin,* we recognized that in determining harm we must consider whether the accused was denied effective cross-examination or possible impeachment due to the denial of the reports. *Cullen v. State,* 719 S.W.2d 195, 196–98 (Tex.Crim.App.1986). In order to make such a determination, the appellate court must review the documents in question. *Id.* However, where the defendant is denied the opportunity to make the statements available for the appellate record so that harm can be determined, harm is presumed. *See, e.g., Zanders v. State,* 480 S.W.2d 708, 710–11 (Tex.Crim.App.1972), *cert. denied,* 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 106 (1975); *White v. State,* 496 S.W.2d 642, 646 (Tex.Crim.App.1973). Here, appellant requested but was denied the opportunity to make the reports part of the record for ap-

11. We note that Rule 614 defines a written statement as one "made by the witness that is signed

or otherwise adopted by him." TEX.R.CRIM. EVID. 614(f)(1).

peal. Because we do not have the reports before us to review, we cannot conclude beyond a reasonable doubt that the error made no contribution to the verdict.

Accordingly, the judgment of the trial court is reversed and this cause is remanded to the trial court.

WHITE, J., concurs.

McCORMICK, P.J., and OVERSTREET and MEYERS, JJ., dissent.

### OPINION ON STATE'S MOTION FOR REHEARING

McCORMICK, Judge.

The offense is capital murder, and the sentence is death. Appellant raised thirty-four points of error on direct appeal. On original submission, this Court sustained points of error seventeen through nineteen, reversed the conviction and remanded the cause for a new trial.

We granted grounds three and four of the State's motion for rehearing. These grounds are directed to this Court's opinion on original submission disposing of appellant's points of error seventeen through nineteen which we address later in this opinion. This Court sustains ground three of the State's motion for rehearing, and affirms the trial court's judgment.

This opinion addresses appellant's thirty-four points of error. Viewed in the light most favorable to the verdict, the evidence shows that on August 29, 1988, in Harris County, Texas, the unemployed appellant and an accomplice planned a robbery at a pawnshop. They decided to kill all the witnesses because they did not want to be identified. Later that day appellant and the accomplice smoked some "crack" cocaine, walked into a pawnshop and without any warning or provocation appellant eventually shot the two victims in the heads. The murdered victims were brother and sister whose father owned the pawnshop. After shooting the victims, appellant used the butt of his gun to break the glass of a jewelry display case. The gun also discharged shooting appellant's little finger of his right hand. Ap-

pellant and the accomplice took jewelry and money, and "partied" for a couple of days.

Several witnesses saw appellant and the accomplice walking in the area of the pawnshop before and just after the killings. Appellant was arrested on September 1, 1988, at about 6:00 p.m. He confessed later that evening at about 8:00 p.m. The next morning appellant was taken before a magistrate who appointed counsel.

At guilt-innocence, appellant presented the testimony of Floyd McDonald who had been the director of the Houston Police Laboratory for thirty years. McDonald tested appellant's urine on September 2, 1988, at appellant's counsel's request. Appellant's urine had a significant concentration of benzoylecgonine which led McDonald to believe appellant had ingested cocaine during the previous week. McDonald testified cocaine is broken down to benzoylecgonine once it is ingested into the human body. McDonald could not say exactly when appellant last ingested cocaine.

McDonald also testified about the effects of cocaine. He testified cocaine can make a person feel "almost omnipotent," and can make some persons do things they normally would not do "depending on the individual." He also testified cocaine is "very, very addictive" if psychological dependence is included as part of the definition of "addiction." McDonald testified cocaine is more addictive than heroin.

On cross-examination, McDonald testified benzoylecgonine can be detected in a person's urine for up to two weeks after ingestion. McDonald also testified cocaine does not deprive individuals of their "ability to think and make decisions." McDonald testified how a person would not be considered "under the influence" of cocaine but still test positive for cocaine.

"Q. If it's smoked, it may last up to an hour?

"A. Probably, yes, sir.

"Q. After that period of time, you would detect the substance in the body, but the person would not be under the influence of it?

"A. Right."

McDonald further testified cocaine might lessen the inhibitions of a person with an "antisocial personality."

"Q. Again, are you familiar with what an antisocial personality is?

"A. Yes, sir.

"Q. You have a person who has demonstrated that 'antisocial personality.' How does that affect him?

"A. It might lessen the inhibitions. That's really what it does. It makes you lower your inhibitions. *It ain't going to change your personality. It's going to enhance it.*" (Emphasis Supplied).

At punishment, the State presented the testimony of Dr. Field, a psychologist. Field testified he interviewed appellant in prison in February and April of 1984 primarily because of appellant's refusal to work. He testified appellant had an IQ of 104 which was above average. He also testified appellant did not have "any kind of psychiatric disorder." Field testified appellant had an "antisocial personality disorder." He said individuals with this refuse to "operate inside the law" and have no conscience. He testified these individuals may show remorse but usually "because they have been caught or they have had to pay a penalty" for their behavior.

"Q. Would they show any type of remorse for their antisocial behavior?

"A. They may show remorse, but that's because they have been caught or they have had to pay a penalty for what that behavior was, but as far as being remorseful for the actual action itself, no. Not usually."

Field's opinion was that appellant could not be rehabilitated and he would be a threat to society.

Field's report, which was admitted into evidence, indicated appellant had a history of "drug abuse and some alcohol abuse." Field testified drugs would not cause a person with an antisocial personality to commit crimes, but drugs would "increase the likelihood of acting out behavior for what usually leads to criminal acts."

"Q. So being on drugs basically doesn't cause them to commit criminal acts necessarily?

"A. No, but drugs increase the likelihood of acting out behavior for what usually leads to criminal acts."

On cross-examination, Field testified drugs might make a person do something they would not do if they were not on drugs.

The State also presented evidence of appellant's two prior burglary convictions and appellant's military records reflecting his discharge "Under Other Than Honorable Conditions." Appellant's prison records reflected numerous reports of misconduct usually involving appellant's refusal to work. Appellant had been paroled from prison twice when he committed this offense.

The State also presented the testimony of Jackson who was doing time on a misdemeanor theft charge in the County jail while appellant was there awaiting trial for this offense. Jackson testified appellant attempted to enlist his aid to kill appellant's accomplice who also was incarcerated in the county jail. Appellant wanted to poison him. Jackson testified appellant told him he did not trust the accomplice because he "panicked on [appellant] real bad in the pawnshop" which made appellant "extremely nervous." Appellant expressed no remorse to Jackson for the pawnshop killings.

The State also presented the testimony of Bitter who was a narcotics investigator with the Texas Department of Corrections. He testified he investigates narcotics trafficking in the prison system and prepares reports based on his observations. Bitter testified inmates can obtain drugs in the prison system.

Appellant presented the testimony of Marquart who was an Associate Professor of Criminal Justice at Sam Houston State University. Marquart testified about the difficulty of predicting future behavior based on his study of 92 inmates whose death sentences had, for one reason or another, been commuted to life. See also *Coleman v. State,* 881 S.W.2d 344, 358 (Tex.Cr.App.1994). Marquart's study concluded that "only" about ten percent of these individuals later

committed criminal acts of violence. Marquart provided no testimony specifically relating to appellant. On cross-examination, Marquart testified that at least one member of his research group committed another homicide. Marquart did not know how many members of his research group had received the death penalty for killing two or more people in a robbery-murder after having twice served time in prison.

In point of error thirteen, appellant challenges the sufficiency of the evidence to support an affirmative answer to special issue two which asked the jury to consider whether there is "a probability that [appellant] would commit criminal acts of violence that would constitute a continuing threat to society." Under the applicable standard of review, we hold, as we did on original submission, the evidence is sufficient to support an affirmative answer to special issue two. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Harris v. State*, 738 S.W.2d 207, 225–26 (Tex.Cr.App.1986). Point of error thirteen is overruled.

 In points of error one through three, appellant argues his confession was obtained in violation of Article 38.22, V.A.C.C.P., the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10, of the Texas Constitution. Appellant claims intoxication due to cocaine use and the pain caused by the bullet wound to his finger rendered him incapable of voluntarily confessing. This Court applies a deferential standard in reviewing a trial court's ruling on a motion to suppress. See *Lucas v. State*, 791 S.W.2d 35, 47 (Tex.Cr.App.1989).

The State presented the testimony of the officers who arrested appellant and obtained his confession. They testified appellant voluntarily confessed within approximately two hours of his arrest after he had been informed of his rights and waived them.

These officers also testified appellant had a bandage on the little finger of his right hand. Appellant did not request medical attention for the injury. Appellant told the police he had taken care of the injury himself, and it was not hurting him. When appellant's counsel requested medical care for appel-

lant's finger on September 2nd, the doctor merely required appellant to soak it in a Betadine solution.

The officers also testified appellant did not appear to be intoxicated, and he had control of his mental faculties. McDonald testified how a person would not be considered "under the influence" of cocaine but still test positive for cocaine. McDonald also testified cocaine does not deprive individuals of their "ability to think and make decisions."

Appellant's written statement complies with Article 38.22, Section 2, V.A.C.C.P. And, the record supports findings appellant was informed of his rights, he understood them, he knowingly waived them, and he voluntarily confessed. The record also supports findings appellant's finger injury and his cocaine use did not render him incapable of voluntarily confessing. See, e.g., *Nichols v. State*, 754 S.W.2d 185, 189–91 (Tex.Cr.App. 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989). Points of error one through three are overruled.

 In point of error four, appellant claims his confession was obtained in violation of Article 15.17(a), V.A.C.C.P. Article 15.17(a) requires that one making an arrest shall "without unnecessary delay" take the arrestee before a magistrate. The record reflects the police did not take appellant before a magistrate before he confessed even though a magistrate was available. Appellant was taken before a magistrate on the morning of September 2nd.

Appellant argues the police violated Article 15.17(a) by not taking him before a magistrate sooner than they did. Appellant claims a magistrate "would have offered counsel to the Appellant and competent defense counsel would not have permitted the Appellant to give a statement adverse to his penal interests."

Appellant was taken before a magistrate within approximately 16 hours after his arrest. This satisfies the "without unnecessary delay" requirement of Article 15.17(a). In addition, appellant voluntarily confessed within two hours of his arrest after he was informed of his rights. The record contains

no evidence of a causal connection between any violation of Article 15.17(a) and appellant's voluntary decision to confess. See *Boyd v. State*, 811 S.W.2d 105, 124–25 (Tex. Cr.App.), cert. denied, 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991).

■ Appellant also asserts a denial of Equal Protection and other constitutional rights "because of the preferential treatment offered a juvenile as opposed to an adult in relationship to the requisite Magistrate warning." Appellant did not raise this claim in the trial court. Therefore, he presents nothing for review. See Tex.R.App.Proc. 52(a). Point of error four is overruled.

In point of error twenty-nine, appellant claims the trial court erroneously denied his request for a mistrial when appellant's accomplice was brought into the courtroom in jail clothes for identification purposes. The record reflects that after one of the State's witnesses had identified appellant as one of the persons he saw walking in the vicinity of the pawnshop before the killings, appellant's accomplice was brought into the courtroom for identification purposes. The accomplice was wearing jail clothes. Appellant immediately objected and the jury was excused.

■ Appellant claimed bringing the accomplice into the courtroom in jail clothes was not much different than having appellant tried in jail clothes. The trial court sustained the objection, but denied appellant's motion for mistrial. The accomplice wore civilian clothes the other times he appeared in court for identification purposes.

■ Appellant argues bringing the accomplice into the courtroom in jail clothes violated appellant's fundamental constitutional right to the presumption of innocence. This record contains no evidence the jury actually saw the accomplice in jail clothes. Appellant's brief even states it is unclear whether the jury saw the accomplice in jail clothes but "it appears that that is the case." Appellant has not presented a sufficient record for this Court to review his claim. See Tex.R.App.Proc. 50(d). Moreover, assuming the jury saw the accomplice in jail clothes, we find no harm. Compare *Randle v. State*, 826 S.W.2d 943, 945–46 (Tex.Cr.App.1992)

with *Kimble v. State*, 537 S.W.2d 254, 255 (Tex.Cr.App.1976). Point of error twenty-nine is overruled.

■ In point of error thirty, appellant claims the trial court erred in finding from the totality of the circumstances "that appellant's pretrial identification was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The record reflects the trial court conducted a pretrial hearing on appellant's Motion for Identification Hearing Outside the Presence of the Jury. The evidence from this hearing indicates the police interviewed the objectionable witness shortly after the pawnshop killings. This witness told the police she saw appellant in the pawnshop shortly before the murders. She knew appellant by the name of "Red," and she gave the police appellant's description, nickname, and where he lived. She stated she even spoke to appellant who told her he was looking for a birthday gift for a relative. In his confession, appellant also said that he spoke to the witness inside the pawnshop and that he knew her. The witness also stated appellant left the pawnshop saying he was going across the street to look for another gift. As the witness was leaving the pawnshop in her car, she honked and waved to appellant who waved back. The police showed the witness appellant's photograph. She said the photograph was the person she knew as "Red." The trial court ruled the witness would be permitted to testify before the jury.

■ Appellant claims the identification procedures the police followed were so impermissibly suggestive as to give rise to a substantial likelihood that the witness misidentified appellant. However, the record reflects the witness did not testify at appellant's trial, and appellant cites to no evidence in the record where her identification of appellant was presented to the jury through the testimony of other witnesses. See Tex. R.App.Proc. 74(f). Therefore, we find no harm since appellant appears to argue a pretrial identification unduly influenced an in-court identification that never occurred. In addition, we find no error in the trial court's ruling allowing the witness to testify before

the jury. The witness knew appellant. Point of error thirty is overruled.

■ In points of error twenty through twenty-two, appellant claims the trial court violated Tex.R.Crim.Evid. 803(8)(B), the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 19, of the Texas Constitution, by overruling appellant's objection to the testimony of Texas Department of Public Safety (DPS) chemist Sandra Denney whose testimony was based on a DPS business record prepared by another DPS employee. Appellant argues the trial court erroneously admitted Denney's testimony under *Cole v. State*, 839 S.W.2d 798 (Tex.Cr.App.1990). The State argues appellant failed to preserve any *Cole* error for appeal. We agree.

The record reflects Sandra Denney was the supervisor of the DPS crime lab in Houston. Denney testified at guilt-innocence from a DPS report that was prepared by Donna Dowden who also was a DPS chemist and a serologist specialist. Denney testified from Dowden's report that Dowden tested various blood samples found at the murder scene as well as a sample of appellant's blood. Denney testified these blood samples contained the same genetic markers. Denney testified based on her calculations that only eight percent of the population had the same genetic characteristics found in appellant's blood. None of the tested blood samples from the murder scene contained the accomplice's genetic markers. Dowden's report also was admitted into evidence as State's exhibit 98.

The record reflects appellant lodged several objections to the admission of Dowden's report. First, appellant objected to Denney testifying "to the contents of any report that is not in evidence." When the State offered Dowden's report for admission into evidence, appellant objected that the proper predicate had not been laid and reliability had not been proven up.

"[STATE]: Your Honor, at this time, the State would offer in evidence State's No. 98 after tendering to [appellant] for his inspection.

"[APPELLANT]: I would object to the introduction of State's 98 for the reason that the proper predicate has not been laid for the introduction of that. In addition thereto, the reliability of this document has not been proven up.

"[STATE]: It's a business record, Your Honor.

"[COURT]: Overruled. I will admit State's 98."

After appellant examined Denney outside the presence of the jury, he objected to the admission of Dowden's report because the reliability of the document had not been proven.

"[APPELLANT]: So the record is clear, the tests that are depicted in State's 98 are tests that were run by somebody else and not you; is that correct?

"[DENNEY]: They were run by a chemist named Donna Dowden.

"[APPELLANT]: You had nothing to do with the running of those particular tests?

"[DENNEY]: I did not perform those tests.

"[APPELLANT]: Even though you had run tests before like what's depicted in State's 98, this is not your work, but the work product of Donna Dowden?

"[DENNEY]: Yes, sir.

"[APPELLANT]: I would further object to the reliability of those test results. They have not been proven.

"[COURT]: Overruled. I am admitting 98."

Later, when Denney began to testify about the results of Dowden's tests, appellant made the same objections he made to the admission of State's No. 98.

"[STATE]: Was there an opinion formed as to the genetic markers of the dried blood compared with [appellant's] genetic markers?

"[DENNEY]: Yes, the chemist concluded—

"[APPELLANT]: I would object. The next question is going to be objectionable for the same reasons that I previously set forth before the Court. For the record, do I need to state those again or will you be aware of my reasons?

"[COURT]: I am aware of them. I'm overruling them."

On this record, we hold appellant's objections that the "proper predicate" and "reliability" had not been established failed to clearly present any *Cole* error to the trial court. See Tex.R.App.Proc. 52(a). Appellant did not object that Denney's testimony was in contravention of that portion of Tex. R.Crim.Evid. 803(8)(B) which prohibits as hearsay "matters observed by police officers and other law enforcement personnel." See *Cole*, 839 S.W.2d at 800 fn. 4. Appellant also made no claim that admission of Denney's testimony violated the Constitution. See Tex.R.App.Proc. 52(a).

■ In addition, any error in admitting Denney's testimony was harmless. Her testimony goes to support a finding that appellant was in the pawnshop because some of his blood was found there. However, several other witnesses placed appellant and his accomplice close to the pawnshop before and just after the killings. Moreover, appellant admitted in his confession that he was there and wounded himself, and the jury heard the other evidence about his wounded finger. Appellant even used the evidence of his finger injury in support of his jury arguments at guilt-innocence that he could not have voluntarily confessed. Denney's testimony could not have caused the jury to convict or to affirmatively answer the special issues. See Tex.R.App.Proc. 81(b)(2). Points of error twenty through twenty-two are overruled.

In point of error twenty-three, appellant claims the trial court erred in denying his motion to change venue without a hearing. In points of error twenty-four and twenty-five, appellant claims the trial court violated the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10, of the Texas Constitution, by denying his motion to change venue without a hearing.

The record reflects appellant orally and by written motion requested a change of venue just before the punishment phase of the trial began. The case, including jury selection, had lasted for approximately three months at this point. The trial court granted appellant's request to make an offer of proof in support of his motion to change venue.

"[APPELLANT]: *I would ask that the Court allow for an offer of proof to go along with my request for this motion to be carried up for appeal in this case as well as the affidavits attached to that motion and incorporated in the motion itself as an offer of proof that the Defense would offer in evidence to show that these things are prejudicial to the right of a fair trial for this particular Defendant, Your Honor.*

"[COURT]: I'll let you do that." (Emphasis supplied)

Appellant's offer of proof informed the trial court of a series of newspaper articles that began to run that morning in a local newspaper. These articles said that violence, gangs and drugs were prevalent in the prison system, and that some gang members had distinctive tattoos. Appellant also informed the trial court that a local television station was about to present a series of programs about cocaine-related criminal activity. Appellant said he did not file his motion sooner because he could not have "anticipated such a media event prior to [when he filed the motion]." The newspaper articles and television shows had nothing to do with appellant or this case. The trial court denied appellant's motion because it was not "timely or properly raised."

"[APPELLANT]: *Your Honor, I filed a motion for change of venue. The Court has denied it on its face without a hearing. I would ask that the three affidavits to the motion for change of venue go up with it as a proffer of the evidence on appeal the same as if we had had a full-blown hearing on that motion.*

"[STATE]: We are at the punishment phase of the trial. At this point, there is no procedure to file a motion for change of venue. The Court has given the jury instructions not to listen to, read, or in any way listen to any facts about this particular case. The Court has been very specific in its admonishments to the jury about watching television or reading anything about the case.

"[COURT]: I'm going to overrule it. I don't think it's timely or properly raised." (Emphasis supplied)

 Appellant argues the trial court erroneously denied his motion to change venue without a hearing. The record reflects appellant never requested a hearing, objected to the absence of a hearing, or claimed the Constitution required a hearing. See Tex. R.App.Proc. 52(a). Appellant received all the relief he requested when the trial court granted his request to make an offer of proof in support of his motion to change venue. In addition, on this record, the trial court did not abuse its discretion in denying appellant's motion to change venue. See Articles 31.03 & 28.01, V.A.C.C.P. Points of error twenty-three through twenty-five are overruled.

 In points of error five and six, appellant argues the trial court's admission of Field's testimony violated appellant's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Texas Constitution. Appellant claims the admission of Field's testimony violated *Estelle v. Smith* because Field failed to give *Miranda* warnings to appellant before the 1984 prison interviews. See *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The State argues *Estelle* does not apply here. We agree.

The record reflects Field interviewed appellant twice in 1984 while appellant was in prison on a burglary conviction. Field was a psychologist who was employed within the prison system. Field testified he interviewed appellant based on a referral by an assistant warden due to appellant's "history of consistant (sic) refusal and failure to work." Field testified that when an inmate refuses to work, "there has to be a psychological evaluation as well as a medical evaluation" for the purpose of determining the existence of any "psychopathology." Field testified there were no charges pending against appellant, and he was not ordered by any court to do the interviews. Field's diagnosis of appellant as having an antisocial personality and his opinions appellant could not be rehabilitated and would constitute a threat to society were based on the 1984 interviews and hypotheticals involving the facts of the case.

Field's 1984 interviews of appellant occurred more than four years before "this offense, the indictment, and the appointment of counsel." See *Cook v. State*, 821 S.W.2d 600, 604 (Tex.Cr.App.), cert. denied, 503 U.S. 998, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1991). Field's examination of appellant "was not in connection with testifying on the issue of future dangerousness; this examination occurred in his capacity" as a psychologist within the prison system for the purpose of determining the existence of any "psychopathology." See id.; compare *Cates v. State*, 776 S.W.2d 170, 172 (Tex.Cr.App.1989) *with Paez v. State*, 681 S.W.2d 34, 37 (Tex.Cr.App. 1984). Therefore, we cannot say Field's 1984 interviews of appellant made appellant the "deluded instrument" of his own execution for an offense he committed in 1988. See *Estelle*, 451 U.S. at 462, 101 S.Ct. at 1873. The trial court did not err in admitting Field's testimony. See *Cook*, 821 S.W.2d at 604.

Appellant relies on *Lykins v. State*, 784 S.W.2d 32, 36 (Tex.Cr.App.1989), for the proposition that charges need not be filed at the time a statement is made for *Estelle* to apply. We find *Lykins* distinguishable because the oral statement at issue in that case was in response to questioning in connection with an offense for which the defendant was under investigation and later charged. *Lykins*, 784 S.W.2d at 33–34. Here, Field did not interview appellant in connection with this offense. Points of error five and six are overruled.

 In point of error seven, appellant argues the trial court violated Article 38.22, Section 6, V.A.C.C.P., by not allowing appellant to take Field on voir dire outside the presence of the jury to determine the voluntariness of appellant's 1984 statements to Field. Article 38.22, Section 6, in relevant part, states:

"In all cases where a question is raised as to the voluntariness of a statement of an accused, *the court must make an independent finding in the absence of the jury as*

to *whether the statement was made under voluntary conditions.* If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause." (Emphasis supplied)

The statement of facts from the punishment hearing contains 40 pages of objections appellant made outside the presence of the jury just before the punishment hearing began. Initially, the trial court granted appellant's request for a hearing outside the presence of the jury "to determine the qualifications [Field] possesse[d] to make such an opinion as to whether or not [appellant's] right against self-incrimination or right of counsel were violated in making such a statement to a psychologist or psychiatrist while he was in custody without counsel."

"[APPELLANT]: I believe there is a psychiatrist or a psychologist who's subpoenaed here for an evaluation of [appellant] when he was in the Texas Department of Corrections another time. I believe that's part and parcel of some of the TDC records in the case. I would just ask, Your Honor, before those records or the testimony of that psychiatrist or psychologist is offered in evidence, *that we have a hearing outside the presence of the jury to determine the qualifications that he possesses to make such an opinion as to whether or not [appellant's] right against self-incrimination or right of counsel were violated in making such a statement to a psychologist or psychiatrist while he was in custody without counsel.*

"[COURT]: I'll grant that. We can do that before the psychiatrist or psychologist comes on." (Emphasis supplied)

The next 25 pages of the statement of facts contain discussions about other matters. When the parties began to discuss Field's testimony again, appellant stated the court "allows [him] a hearing" outside the presence of the jury to "show why [appellant] was seen [by Field] and the voluntariness of [appellant's] statements" under *Estelle.*

"[STATE]: [Field] will testify that he observed [appellant] for two reasons and was not pursuant to an investigation of any alleged conduct.

"[APPELLANT]: *I believe the Court allows me a hearing to show why [appellant] was seen [by Field] and the voluntariness of his statements and the basis for [Field] to come up with the diagnosis that he did.*

"[STATE]: [Field] would testify that he saw [appellant] in April '84 and also in February '84. The Court is well aware that this offense occurred on August 29th of '88. That report would reflect that he wasn't talking to him in regard to any criminal charge or when any criminal charges were pending.

"[APPELLANT]: There were a number of disciplinary hearings and disciplinary reports (referring to other exhibits unrelated to Field's testimony) that have been made and—

"[STATE]: To save time, where it says that it's the statement of [appellant], we'll go ahead and white that out (referring to other exhibits unrelated to Field's testimony).

"[THE COURT]: Does that address your objection?

"[APPELLANT]: Yes, Your Honor. The oral statements (referring to statements unrelated to Field's testimony) made are not voluntarily made because the refusal to make a statement to an inquiring officer may mandate an automatic loss of credit or loss of time. A penalty could be attached.

"[THE COURT]: Do you have the slip opinion (apparently referring to *Lykins* )?

"[APPELLANT]: Yes, sir.

"[THE COURT]: I'll overrule the objection. This case (apparently referring to *Lykins* ) doesn't have anything to do with the situation they're talking about.

"[APPELLANT]: *I believe the issue of statements made by [appellant] to [Field] and the voluntariness of those statements is going to be an issue.*

"[THE COURT]: Overruled." (Emphasis supplied)

Later, just before the State called Field to testify, appellant made the following objection.

"[APPELLANT]: *I'd offer in evidence my objections that were denied outside the presence of the jury in regard to 38.22 before [Field] testifies concerning statements made while [appellant] was in custody, as a result of custodial interrogation. We would again re-urge our motion to be able to examine this witness outside the presence of the jury.*

"[THE COURT]: Same ruling. Overruled." (Emphasis supplied)

Appellant argues the trial court violated Article 38.22, Section 6, by not allowing him to question Field outside the presence of the jury on the voluntariness of appellant's 1984 statements to Field. The State argues appellant failed to preserve this claim for appeal. We disagree, and hold appellant's objections were sufficient to preserve this claim.

On this record, we also decide the trial court complied with Article 38.22, Section 6. Appellant raised a legal question about the voluntariness of his statements to Field, and, after a hearing outside the presence of the jury, the trial court, in effect, made a finding that appellant voluntarily made the statements. Finally, Article 38.22, Section 6, is not even applicable because Field did not testify about any oral or written statements appellant made to him.

■ In addition, on this record, any error in not allowing appellant to question Field outside the presence of the jury was harmless since appellant knew the factual circumstances of Field's 1984 interviews of appellant. Appellant made no claim he needed to question Field to discover the factual circumstances of these interviews. And, if appellant had other evidence to present on the issue, he had an opportunity to do so by offer of proof or bills of exception. See Tex. R.Crim.Evid. 103(a); Tex.R.App.Proc. 52(b). Point of error seven is overruled.

■ In points of error eight and nine, appellant argues the trial court violated Tex. R.Crim.Evid. 705(b) by not allowing appellant to voir dire Field outside the presence of the jury prior to his giving an opinion on appellant's antisocial personality, future dangerousness and possibility of rehabilitation. Rule 705(b) allows the opposing party, upon request, to explore the "underlying facts or data" of the expert's opinion in a hearing outside the presence of the jury.

The State argues appellant failed to preserve any error for appeal because he did not request a Rule 705(b) hearing. Appellant argues he preserved his Rule 705(b) claim by his objections set out in our discussion of point of error seven. Appellant also relies on a motion he filed, which the trial court denied, in which he claims he requested to voir dire the State's experts outside the presence of the jury.

However, this motion raised only appellant's voluntariness claim under *Estelle.* It did not request a Rule 705(b) hearing. Appellant's objections set out in our discussion of point of error seven also failed to preserve his Rule 705(b) claim. Assuming appellant's statement that the court "allows [him] a hearing" on the "basis for [Field] to come up with the diagnosis that he did" could be construed as a request for a Rule 705(b) hearing, this "request" was made in the context of appellant's objections under *Estelle.* Appellant's motion and his objections set out in our discussion of point of error seven did not clearly and specifically request a Rule 705(b) hearing. See Tex.R.App.Proc. 52(a).

Appellant also relies on various objections he made during Field's direct examination. Prior to Field giving an opinion that appellant had an antisocial personality, appellant made the following objections.

"[APPELLANT]: I would object to what his diagnosis is *until I can take him on voir dire to prove up his qualifications* to make such a diagnosis and specifically in this case.

"[STATE]: He can determine that on cross-examination.

"[COURT]: Overruled.

"[APPELLANT]: *He is not qualified to answer.*

"[COURT]: Overruled." (Emphasis supplied)

Prior to Field giving an opinion that appellant could not be rehabilitated, appellant made the following objections.

"[APPELLANT]: I would object. There has been no showing that he is an expert in making that type of determination. He is not an expert to make that type of opinion.

"[COURT]: I am going to overrule your objection."

\* \* \* \* \* \*

"[APPELLANT]: He is not *competent* to make such a determination, Your Honor.

"[COURT]: Overruled." (Emphasis supplied)

Prior to Field giving an opinion that appellant would constitute a threat to society, appellant made the following objections.

"[APPELLANT]: I would object to that. He is not *competent* to make an evaluation for the same reasons I gave before.

"[COURT]: Overruled. Same ruling.

\* \* \* \* \* \*

"[APPELLANT]: He is not *competent* to make such an evaluation.

"[COURT]: Overrule the objection." (Emphasis supplied)

■ Appellant's objections went to Field's qualifications, and appellant's request to take Field on voir dire outside the presence of the jury to "prove up" his qualifications is not a request for a Rule 705(b) hearing to explore the "underlying facts or data" of the expert's opinion. See *McBride v. State*, 862 S.W.2d 600, 607 fn 16 (Tex.Cr. App.1993) (objection that doctor was "outside his field of expertise" challenged the doctor's qualifications); cf. *Goss v. State*, 826 S.W.2d 162, 168 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993) (a Rule 705(b) hearing affords a defendant an opportunity to determine the *foundation* of the expert's opinion and it may also supply sufficient ammunition to make a timely objection to the expert's testimony because it lacks a sufficient *basis* for admissibility). Therefore, appellant failed to preserve his

Rule 705(b) claim for appeal. See Tex. R.App.Proc. 52(a).

■ Moreover, any error in the trial court's noncompliance with Rule 705(b) was harmless because appellant knew the "underlying facts or data" of Field's testimony. Appellant had copies of Field's 1984 evaluations of appellant which formed the basis of his opinions. In addition, Field provided no damaging, inadmissible testimony in the presence of the jury that could have been discovered in a Rule 705(b) hearing outside the presence of the jury. See *Goss*, 826 S.W.2d at 168 (Rule 705(b) allows the opposing party the opportunity to explore the basis of the expert's opinions without fear of eliciting damaging hearsay or other inadmissible evidence in the presence of the jury); see also *McBride*, 862 S.W.2d at 609; *Vasquez v. State*, 819 S.W.2d 932, 935 (Tex.App.—Corpus Christi 1991, pet. ref'd) (Rule 705(b) allows the party not calling the expert to explore the basis for the opinions without having the jury exposed to otherwise inadmissible data). Points of error eight and nine are overruled.

■ In point of error ten, appellant argues the trial court erred in allowing Field to testify about appellant's antisocial personality disorder because he was not competent to offer such an opinion. The record reflects Field had a bachelor's degree in psychology, a master's degree in social psychology and a Ph.D in counseling psychology. Field was a licensed professional counselor who recently had passed the state board for clinical psychologists. He had practiced in his field for about 15 years. He interviewed appellant twice and prepared written evaluations based on these interviews. The trial court did not abuse its discretion to find Field was competent to express an opinion that appellant had an antisocial personality. See *McBride*, 862 S.W.2d at 607–08; *Fuller v. State*, 829 S.W.2d 191, 195 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993).

■ Appellant's brief raises several challenges to Field's qualifications that appellant did not present to the trial court. Appellant had an opportunity to present

these matters by offer of proof or bills of exception. See Tex.R.Crim.Evid. 103(a)(2); Tex.R.App.Proc. 52(b). And, he had an opportunity to use these matters to cross-examine Field. We decline to hold the trial court erred to admit Field's testimony based on matters appellant presents for the first time on appeal. See Tex.R.App.Proc. 52(a). Moreover, these new matters do not go to the issue of Field's qualifications. They go to the weight to be given his testimony and not to its admissibility. Point of error ten is overruled.

■ In points of error eleven and twelve, appellant argues the trial court violated his right to effectively confront the witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 19, of the Texas Constitution, by not allowing appellant to voir dire Field outside the presence of the jury prior to Field giving the jury his opinions on appellant's future dangerousness and personality disorders. The record reflects appellant did not present these constitutional claims to the trial court. See, *supra.* Therefore, appellant presents nothing for review. See Tex.R.App.Proc. 52(a). In addition, appellant was not denied the opportunity for "full cross-examination of the State's punishment witnesses and was not denied [the opportunity to exercise] his constitutional right to confront" the witnesses against him. See Tex.R.App.Proc. 52(a); *Barney v. State,* 698 S.W.2d 114, 127–28 (Tex.Cr.App.1985). Points of error eleven and twelve are overruled.

In point of error fourteen, appellant claims the trial court abused its discretion by admitting Bitter's testimony about the availability of drugs in prison. In points of error fifteen and sixteen, appellant also claims the trial court violated the Fourteenth Amendment to the United States Constitution and Article I, Section 19, of the Texas Constitution, by admitting this evidence.

Just before the punishment hearing began, appellant objected to the admission of Bitter's testimony because it was irrelevant and prejudicial. The State claimed the evidence was admissible because it was relevant to special issue two, and because the State an-ticipated appellant would use his drug use to urge the jury to negatively answer special issue two with the inference being that, if appellant was sentenced to life, he would not be dangerous because drugs would be unavailable in the "structured environment" of prison. The State claimed it needed Bitter's testimony to rebut this argument.

"[APPELLANT]: One other oral motion. I anticipate that at some time during the trial of this case that the State may proffer through witnesses before this jury testimony about TDC in general, that in the Texas Department of Corrections in general, or the Institutional Division of the Texas Department of Criminal Justice, or whatever it's called, the state penitentiary, testimony to the effect that there are drugs in TDC and that drugs are readily available in TDC, that there is assaultive conduct in TDC, things like that, general statements about the institution itself.

"I would object to any such testimony, Your Honor, in that those issues themselves are not any evidence that directly reflects on the only two issues the jury has, and that is to determine whether or not [appellant] deliberately committed this offense with the reasonable expectation that somebody was going to die or that he himself is a continuing threat to society.

"I believe they will be attempting to show that the institution itself is a bad institution, and, therefore, [appellant] should be eliminated because Texas has a bad institution. To me, it is inherently prejudicial and doesn't come within any statutory reason for an offer of such testimony. The issue is [appellant] the individual and not the institution itself. Certainly if we offer something to this jury about [appellant], specifically about how he's on drugs or not on drugs, that he cannot receive drugs in TDC, then we may open the door to the State to go into such evidence, but otherwise, the entire Texas state prison system is not relevant and is highly prejudicial.

\* \* \* \* \* \*

"[STATE]: If there's evidence that [appellant] while he's on drugs is of a different character than without drugs, and if there

is evidence that if they put him in TDC, that drugs will not be available, and with no evidence from the State, that is misleading to the jury. We feel it is relevant to establish that unfortunately, the system as it exists right now includes drugs, that drugs are available to inmates, and, more particularly, that inmates in the system know how to obtain them.

"All of the evidence offered so far indicates [appellant] has used drugs for an extended period of time. There is evidence of that. For the jury not to know that drugs are available in the penitentiary leaves the false impression that should they give him life, he would, in fact, not be a danger because no drugs would be available.

"[THE COURT]: Is it the State's intention to do that on the case in chief or rebuttal?

"[STATE]: We feel it's relevant on the case in chief.

\* \* \* \* \* \*

"[COURT]: I'm not sure that evidence about other people in prison and what they get if they want it, I'm not sure that's relevant to his case.

"[STATE]: What is relevant is the fact that it is available to him if he wants it. That's why we offer it. They can't stand up and argue either directly or infer that while he's on drugs, that he would commit an act, but if we lock him up in the penitentiary for life, and that no drugs are available, that he's not going to be dangerous.

"[COURT]: I understand that, but unless that issue is raised, the general character of TDC is not an issue in the trial.

"[STATE]: They raised it when they started voir dire. [Appellant's lawyers] both voir dired constantly on if [appellant] was placed in a structured environment, that he would behave in a different manner. The whole tenor of voir dire was that should he be removed from drugs, that this wouldn't happen.

"That wasn't the proper time for us to go into that. However, there may be a juror who's sitting here who's got the thought in mind that if he's locked up for life, that he would be removed from drugs in a structured environment. What we're saying is that in order for them to make a rational decision, they should be aware of what goes on in that environment. I believe right now, they're left with the thought that TDC is drug-free and so structured that [appellant] would not be a danger.

\* \* \* \* \* \*

"[STATE]: Basically, it's an unfair standard. The evidence indicates that he committed this offense while he was on drugs. If we cannot show any evidence about drugs in TDC, that inherently is unfair.

"[APPELLANT]: How is that unfair when you're looking at the punishment issues in the case?

"[COURT]: The whole thing about it is that the answers to those questions should be based on the facts concerning [appellant] individually. The whole purpose of Penry is so that the jury makes the decision on all of the evidence available and not be limited in making a rational decision.

"I'm going to go ahead and take the risk. I'll deny the motion and let the State put it in. The whole purpose is for the jury to make an intelligent decision knowing all the facts. For one side to be able to stand and argue what amounts to an absolute falsehood, that would be unfair and deprive the jury of necessary facts they need to know.

"[APPELLANT]: For argument's sake, you're saying because [appellant] might make a certain argument, that the State should be able to counter that in its case in chief before we get close to that stage of the trial? We're not telling the Court this is the argument we're going to make.

"[COURT]: It's because it's been made an issue in the case."

Appellant used the evidence of his drug use in support of his jury argument for a negative answer to special issue one because "there could be no deliberation." He also urged the jury to consider appellant's drug use in answering special issue two.

"You've got the horrible facts of what happened to [the victims], but in answering Special Issue No. 2, *especially when look-*

*ing at the fact that at the time, no matter what his conduct was, that he had to be under the influence of crack cocaine, then you have to look at the rest of the evidence that you have about [appellant] before you."* (Emphasis supplied)

In responding to Bitter's testimony, appellant argued it would be unfair to give him the death penalty because inmates were doing drugs in prison.

"The testimony of Mr. Bitters was offered to show you the availability of drugs throughout the system so if you thought [appellant] in a structured environment wouldn't commit crimes, then they want you to think that there would be drugs in that structured environment. All I can say to that, ladies and gentlemen, is that I want you to be fair and not give [appellant] the death penalty because of what you've heard some other inmates were doing in prison with drugs."

Appellant also argued the jury should disregard Bitter's testimony because there was no evidence that appellant "was found to have any incidents [in prison] relating to any drugs in any shape or form."

"In an effort to secure the death penalty against him, they brought you Agent Bitter. I think the general thrust of his testimony is that there are drugs in the TDC, and because there are drugs in TDC, there's every reason to believe that [appellant] will use those drugs, and because he uses those drugs, he will, therefore, continue to be a threat to society. I assume that's what they were getting at.

"Well, ladies and gentlemen, I want you to take the State's own proof. Look at all of those TDC records. There is not one single incident wherein [appellant] was found to have any incidents relating to any drugs in any shape or form.

"[STATE]: I would object. May I approach the bench?

"[COURT]: Overruled.

"[STATE]: We would object to it being a misstatement of the facts.

"[COURT]: Overruled."

The State did not mention Bitter's testimony during its jury arguments or urge the jury to give appellant the death penalty because other inmates were using drugs in prison. The State emphasized the brutal facts of the offense and Field's testimony that appellant was dangerous and could not be rehabilitated. The State also mentioned that appellant did not behave well in the structured environments of the army or prison. The State also argued appellant commits serious crimes to support a drug habit because appellant refuses to work.

"The end to him justifies the means, whether or not it means killing people for jewelry or burglarizing their homes to get whatever he wants because he doesn't work. You know that about him.

"What else do you know? He takes dope. He's been taking dope other than cocaine. That's not inclusive. Where does he get the money? We know he burglarized two separate places and he committed a robbery-murder."

Appellant argues Bitter's testimony about the availability of drugs in prison was "immaterial, irrelevant and blatantly prejudicial." Appellant also argues, as the basis of his constitutional claims, that it was "fundamentally unfair" to admit Bitter's testimony because the State's failure to "maintain a prison system free from drugs or corruption" causes inmates to use drugs in prison. The State argues that since appellant injected the issue of his drug use into the trial and since the term "society" in special issue two includes "prison society," the availability of drugs in that society became relevant to special issue two. See *Rougeau v. State*, 738 S.W.2d 651, 660 (Tex.Cr.App.1987), cert. denied, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988).

 We agree. The record from guilt-innocence reflects the State introduced a redacted version of appellant's confession omitting any references to appellant using crack cocaine prior to the commission of the offense. Appellant later introduced the entire confession which included the references to his drug use on the day of the offense. Appellant also presented McDonald's testimony that appellant had used cocaine sometime before he confessed.

At punishment, the State presented Field's testimony that appellant was dangerous, and drugs could make him more dangerous. Even appellant's own witness at guilt-innocence, McDonald, provided testimony on cross-examination to support this finding.

"Q. You have a person, who has demonstrated that 'antisocial personality.' How does that affect him?

"A. It might lessen the inhibitions. That's really what it does. It makes you lower your inhibitions. *It ain't going to change your personality. It's going to enhance it.*" (Emphasis supplied)

On this record, Bitter's testimony about the availability of drugs in prison was relevant to how great a threat appellant was to "prison" society. See *Rougeau,* 738 S.W.2d at 660. The record contains evidence that appellant is a drug-user and drugs might make him more dangerous than he normally is. Therefore, the evidence about the availability of drugs in prison was relevant to show appellant could be just as dangerous in prison society as he is in nonprison society where drugs are freely available. See *id.*

Also, appellant made the "structured environment" argument which the State claimed he would make. When appellant urged the jury in answering special issue two to look at the fact that appellant "had to be under the influence of crack cocaine" when he committed the offense, one inference the jury could draw was that, if appellant received a life sentence, he would do well in the structured environment of prison due to the unavailability of drugs there. The State was entitled to rebut this inference with the evidence about the availability of drugs in prison. The trial court did not abuse its discretion in admitting Bitter's testimony. See *Montgomery v. State,* 810 S.W.2d 372, 390–91 (Tex.Cr.App. 1990) (op. on reh'g).

In addition, the record reflects appellant did not claim the admission of Bitter's testimony violated his constitutional rights. Therefore, appellant presents nothing for review. See Tex.R.App.Proc. 52(a). Points of error fourteen through sixteen are overruled.

In point of error seventeen, appellant claims the trial court erred in not striking Bitter's testimony or declaring a mistrial because of Bitter's failure "to produce statements previously prepared by himself relating to his testimony." In points of error eighteen and nineteen, appellant claims the trial court denied appellant due process of law and the right to confront the witnesses against him under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 19, of the Texas Constitution, when it refused to order Bitter to produce these "statements."

Bitter, who was a narcotics investigator within the prison system, testified about the availability of drugs in prison. On cross-examination, Bitter testified he prepared reports concerning his investigations of drug activity in the prison system. Bitter did not have these reports with him at trial. Appellant requested the trial court to order Bitter to produce the reports pursuant to Tex. R.Crim.Evid. 614(a). The trial court ordered Bitter to produce any reports specifically relating to appellant but denied his request as to any other reports. Appellant requested production of the other reports because he wanted to cross-examine Bitter "about those other instances." The trial court denied this request. Appellant claimed the trial court's ruling violated Rule 614(a) and appellant's confrontation and due process rights under the Federal and State Constitutions. Appellant did not cross-examine Bitter on the issue of the availability of drugs in the prison system.

 On original submission, this Court relied on federal "Jencks Act" jurisprudence to hold the trial court erred in not requiring Bitter to produce his reports. See 18 U.S.C. Section 3500. This Court's opinion on original submission relied on *United States v. Roark,* 924 F.2d 1426 (8th Cir.1991), for this holding. In ground three of its motion for rehearing, the State argues *Roark* is distinguishable and Rule 614(a) requires the *prosecutor* to produce only those statements "possessed by the prosecutorial arm of the government."

Rule 614(a) states:

"After a witness other than the defendant has testified on direct examination, *the court,* on motion of a party who did not call

the witness, *shall order the attorney for the state or the defendant* and his attorney, as the case may be, *to produce,* for examination and use of the moving party, *any statement of the witness that is in their possession* and that relates to the subject matter concerning which the witness has testified." (Emphasis supplied)

The "plain language" of Rule 614(a), as it applies here, speaks only to requiring a *prosecutor* to produce witness statements that are in the *prosecutor's* possession. The federal cases the State cites addressing the meaning of "in the possession of the United States" for Jencks Act purposes are consistent with this interpretation of Rule 614(a). See, e.g., *United States v. Escobar,* 674 F.2d 469, 478–79 (5th Cir.1982) (statement in the hands of local police is not a statement in the hands of the federal prosecutor for Jencks Act purposes); *United States v. Trevino,* 556 F.2d 1265, 1271 (5th Cir.1977) (statement "in the possession of the United States" means a statement in the hands of the federal prosecutor; a presentence report in the custody of a probation officer is not Jencks Act material); *United States v. Dansker,* 537 F.2d 40, 61 (3rd Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) (Jencks Act requires production only of statements "possessed by the prosecutorial arm of the federal government").

In addition, we find *Roark* distinguishable because *Roark* did not address the meaning of "in the possession of the United States" for Jencks Act purposes. See *Roark,* 924 F.2d at 1430–1434. That issue was never raised in *Roark.* See *id.* Moreover, to the extent *Roark* is inconsistent with our interpretation of Rule 614(a), we are not bound to follow it.

We hold the "plain language" of Rule 614(a) requires a prosecutor to produce witness statements that are in the prosecutor's possession. And, since the record does not reflect that Bitter's reports were in the prosecutor's possession or that Bitter was part of the "prosecutorial arm of the government," the trial court did not err in denying appellant's request to order Bitter to produce them.

To support his constitutional claims, appellant argues the "cross-examination of [Bitter] was obviously frustrated by the court's ruling." Appellant cites no authority to support his constitutional claims. Therefore, appellant presents nothing for review. See Tex.R.App.Proc. 74(f). In addition, we cannot say the trial court's refusal to stop the trial for Bitter to produce his reports violated appellant's right to confront and cross-examine the witness against him. See *Pennsylvania v. Ritchie,* 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (the ability to question adverse witnesses does not include the power to require pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony; the right to confront one's accusers is usually satisfied if the defendant receives wide latitude at trial to question witnesses); *Tucker v. State,* 771 S.W.2d 523 (Tex.Cr.App. 1988), cert. denied, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989); *United States v. Williams,* 447 F.2d 1285, 1288–90 (5th Cir.1971), cert. denied, 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972).

Also, Bitter testified only about the general availability of drugs in the prison system. The main purpose of cross-examination is to test the truth and veracity of the witness' testimony on direct examination. The trial court could have taken judicial notice of the general availability of drugs in prison. See Tex.R.Crim.Evid. 201(b)(1) & (2); *Holloway v. State,* 666 S.W.2d 104, 108 (Tex.Cr.App.1984) (theory of judicial notice is that where a fact is well-known by all reasonably intelligent people in the community or its existence is so easily determinable with certainty from reliable sources, it makes no sense to require formal proof); *State v. Cole,* 743 S.W.2d 204, 206 (Tenn.Cr.App.1987) (court could take judicial notice that drug trafficking is a major crime problem in the country today). We sustain ground three of the State's motion for rehearing and overrule points of error seventeen through nineteen.

In point of error twenty-seven, appellant claims the trial court erred in denying his motion for a mistrial at the punishment phase because the State misstated its burden of proof during jury arguments. The State

was addressing Marquart's testimony when the complained-of argument occurred. Marquart had testified for the defense at punishment. Appellant's complaint is based on the emphasized portion of the following argument.

"[STATE]: Now, what did Dr. Marquart come down here and tell us? First of all, Dr. Marquart never took 10 minutes with this man. Dr. Field did have contact with him. Dr. Marquart didn't take 10 minutes with him. Dr. Marquart, what did he tell you? He told you that you can't make any determination. That's what he said. In spite of the fact that you have many years of common sense combined, Dr. Marquart comes in here and tells you what you can't do. You are the ones that heard the evidence. You are the ones that saw the pictures. You are the ones who saw what [appellant] did. You know his background. Dr. Marquart didn't know these things.

"What other things did he tell you? He told you about one person that was sentenced to death, and for some reason, his sentence was commuted, that person was released, and what happened? He committed another homicide. *So if you're willing to gamble under any circumstances, if you're willing to gamble based on this evidence that we have shown of this horrible incident on the 29th day of August of 1988, well—are you really ready to gamble with another innocent victim's life? Are you willing to gamble about anyone's life out there? Are you willing to gamble on that?*

"[APPELLANT]: He's arguing as to the burden of proof. That's not what the law says.

"[STATE]: Our burden is beyond a reasonable doubt.

"[COURT]: Sustain the objection.

"[APPELLANT]: I would ask that the jury be instructed to disregard that line of argument.

"[COURT]: The jury is so instructed.

"[APPELLANT]: I would move for a mistrial.

"[COURT]: Denied." (Emphasis supplied)

Appellant argues the State's "gambling" argument sought to diminish the State's burden of proof on special issue two from proof beyond a reasonable doubt to what members of the jury were willing to gamble on. Relying on *Cuevas v. State,* 742 S.W.2d 331, 347 (Tex.Cr.App.), cert. denied, 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1987), the State argues its "gambling" argument referred to the determination of whether there is a "probability of future dangerousness," not the State's duty to prove special issue two beyond a reasonable doubt.

■ We agree. Marquart's study showed approximately a 9 in 92 probability that someone in his research sample committed a criminal act of violence. The State's argument was consistent with it's burden to prove beyond a reasonable doubt a *"probability* of future dangerousness." The State's argument did not misstate its burden of proof. In addition, the trial court's instruction to disregard was sufficient to cure any error in the argument. See *Andujo v. State,* 755 S.W.2d 138, 144 (Tex.Cr.App.1988). Point of error twenty-seven is overruled.

■ In point of error twenty-eight, appellant argues the trial court erroneously denied his request to disregard the following, emphasized portion of the prosecutor's jury argument.

"At this phase of the trial, [appellant] still has a very important interest because you are going to determine whether he lives or dies, but the community also has an interest. You took an oath to return a true verdict, which you did during the guilt stage. You did that. The State of Texas is satisfied with that verdict. We're not going to argue with you on what you return here today as far as your verdict. *We're not going to argue with that. You can take into consideration what is best for society as well. All we've heard throughout this trial is Leo Jenkins.*

"[APPELLANT]: That's strictly what the law in the Court's charge says. I would object to that.

"[COURT]: Sustained.

"[APPELLANT]: I would ask that the jury be instructed to disregard that statement.

"[COURT]: I'll deny that." (Emphasis supplied)

Appellant claims this argument invited the jury to decide the punishment issues based on what the community expected or demanded. We disagree, and hold the argument was a proper plea for law enforcement. See *Brown v. State,* 508 S.W.2d 91, 96 (Tex.Cr. App.1974). Point of error twenty-eight is overruled.

In points of error thirty-one and thirty-two, appellant claims the version of Article 37.071, V.A.C.C.P., applicable to him violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 13 and 19, of the Texas Constitution because it prevented jurors from individually considering and giving effect to circumstances mitigating against the imposition of the death penalty. In points of error thirty-three and thirty-four, appellant claims the version of Article 37.071 applicable to him violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 13 and 19, of the Texas Constitution, by instructing the jury at the punishment phase that it could not give effect to any of appellant's evidence mitigating against the imposition of the death penalty unless ten or more jurors agreed.

This Court has rejected these and similar claims appellant raises under these points of error. See *Hathorn v. State,* 848 S.W.2d 101, 124–26 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993); *Draughon v. State,* 831 S.W.2d 331, 337–38 (Tex.Cr.App.1992). And, the trial court did not instruct the jury that it could not give effect to mitigating evidence unless ten or more jurors agreed. Points of error thirty-one through thirty-four are overruled.

In point of error twenty-six, appellant claims the trial court erred in denying his motion for mistrial at the punishment phase "for the reason that the trial court abused its discretion in keeping the jury together in deliberations." See Article 36.31,

V.A.C.C.P. Appellant argues the trial court should have granted his motion for mistrial because "the jury's deliberations at the punishment phase of Appellant's capital murder trial were vastly disproportionate with the length of the punishment evidence."

The record reflects that on January 31, 1990, at 1:30 p.m., the jury retired to deliberate the questions that would determine appellant's punishment. The jury deliberated into February 1st and February 2nd. The record is silent on how long the jury deliberated on these days, and appellant's brief even states "it is not possibly (sic) to exactly ascertain the length of their punishment deliberations." On the afternoon of February 2nd, appellant made the following request:

"[APPELLANT]: Comes now [appellant], by and through his attorney, at 1:37 p.m. on February 2nd, 1990, and would at this time respectfully move for a mistrial.

"[COURT]: That will be denied at this time."

This request failed to inform the trial court of any grounds for a mistrial. Therefore, appellant presents nothing for review. See Tex.R.App.Proc. 52(a). Moreover, since part of the basis of appellant's claim is the length of time the jury deliberated on punishment, appellant had the burden of presenting a record showing how long the jury deliberated, and appellant has not carried this burden. See Tex.R.App.Proc. 50(d).

In his brief, appellant makes various "assumptions" to estimate the jury deliberated 16 hours and 45 minutes before returning its verdict. This Court does not decide cases based on assumptions and estimates about the record. See Tex.R.App.Proc. 50(d). Point of error twenty-six is overruled.

The trial court's judgment is affirmed.

CLINTON and OVERSTREET, JJ., concur in the result.

MANSFIELD, J., joins with note:

I join the opinion of the Court, although I have doubt as to whether Bitter's testimony about the availability of drugs in prison was relevant. Appellant fails, however, to present any evidence that admission of this testimony was prejudicial, had any effect on the

jury to his detriment, or in any way violated his constitutional rights. Accordingly, admission of Bitter's testimony was, assuming it was error, harmless error. Tex.R.App. Proc.Rule 81(b)(2).

MALONEY, Judge, dissenting.

Believing appellant's seventeenth point of error was properly disposed of in the manner set forth on original submission, I dissent.[1]

## I.

In support of its third ground for rehearing, the State asserts that the Court on original submission "misstate[d] the standard evaluating whether a statement need be produced by a party by looking to whether the *witness* had control of or access to the statement. It is clear that the correct question in this case is whether the statement was in possession of the prosecution."

While the State now claims that whether the *prosecution* has possession of the statement is the central question in this case, it neither raised this issue on original submission nor did we directly address it. On original submission the State itself interpreted the Rule as referring to statements in the possession of the witness. This is evidenced by way in which the State summarized Rule 614 in its brief:

1. While appellant grouped points of error seventeen, eighteen and nineteen together on original submission, the Court disposed of the case based upon Rule 614 alone, which was asserted in point of error seventeen. The grounds granted on rehearing address only point of error seventeen.

 The Court granted grounds three and four of the State's Motion for Rehearing:
 3. The Reports Larry Bitter made at TDC Regarding Investigations Entirely Unrelated to this Case were not in the Prosecution's Possession[.]
 4. Even if this Court Were to Find a Violation under Rule 614, this Case Should be Remanded to the Trial Court To Include Copies of the Reports in the Record so that the Trial Court can Determine Prejudice, if Any[.]

2. The State argued on original submission that appellant's request exceeded the Rule's requirement that the statements pertain to the "subject matter concerning which the witness has testified." In this regard, the State argued

Rule 614 requires that the defense be provided statements of a witness that are in their possession and that relate to the subject matter concerning which the witness has testified.

In addition, the State asserted several arguments on original submission as to why Bitter's reports were not subject to Rule 614, none of which suggested that statements subject to Rule 614 can only be in the possession of the *prosecution*.[2] Nevertheless, the Court has decided to address the State's belated argument.

The State argues that its newly asserted interpretation, requiring possession by the *prosecution*, is supported by the language and interpretation of the Jencks Act. Rule of Criminal Evidence 614(a) provides:

After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is *in their possession* and that relates to the subject matter concerning which the witness has testified.

this rule was not intended to require production of every report a witness had ever seen or made regarding a topic on which he was testifying. More specifically, Rule 614 cannot be interpreted to require Bitter to produce every report he had ever seen or made regarding drug activity at T.D.C.J.I.D.

The State also argued that production would be "extremely onerous" and "herculean."

The State further stated in a single sentence that the reports were not subject to production because

as appellant himself acknowledges, the T.D.C.J.I.D. reports were not in Bitter's possession nor the State's, and so could not be compelled under Rule 614.

While it is difficult to determine exactly what point the State was making in this single sentence, it seems that the State was contending that because the reports were located at TDC, they were not in the personal possession of the witness *or* the State. This is not the same argument asserted by the State in its motion for rehearing.

TEX.R.CRIM.EVID. 614(a) (emphasis added). The Jencks Act provides:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness *in the possession of the United States* which relates to the subject matter as to which the witness has testified ...

18 U.S.C. § 3500(b) (emphasis added). The majority addresses the State's contention by holding that the "plain language of Rule 614(a), as it applies here, speaks only to requiring a *prosecutor* to produce witness statements that are in the *prosecutor's* possession." *Majority opinion on rehearing* at 819. The majority neglects to specify exactly what language contained in Rule 614 so *plainly* requires possession by the prosecutor alone. As emphasized above, Rule 614 requires production of "any statement of the witness that is *in their possession.*" I do not see as plainly as the majority the requirement in this language that the statements be in the possession of the prosecutor. It might very well be that the word "their" refers back to *any or all* of the previously named persons—"the attorney for the state or the defendant and his attorney" *or* "the witness[.]" Under no "plain language" reading of the rule, however, can it be said to refer back *only* to "the attorney for the state[,]" as the majority holds.

The majority also argues that its "plain language" interpretation is bolstered by those federal cases that require possession to be in the prosecutorial arm of the government. This reasoning is flawed in light of the conspicuous differences between the language of the Jencks Act and Rule 614 in this respect. All of the federal cases cited by the

State in support of this proposition interpret the language of the Jencks Act. The Jencks Act expressly requires that the statement be "in the possession of the United States." In contrast, Rule 614 refers to a statement "of the witness that is *in their possession* [.]" Were Rule 614 intended to substantively mirror the Jencks Act in this regard, it would refer to a statement of the witness "in the possession *of the State.*" [3]

The holding of the majority, requiring that the statement be in the possession of the prosecutor, invites the prosecution to discourage witnesses from giving them their statements in an effort to circumvent the production requirements of Rule 614. Such an interpretation effectively emasculates the Rule. Accordingly, I would overrule the State's third ground for rehearing and interpret Rule 614 as the Court did on original submission, requiring production of the statements at issue in this case, in the possession of the witness, Bitter.[4]

The Court held on original submission that:

> [W]e think it reasonable that when a defendant requests the production of a statement under Rule 614, the State bears the burden, as the party contesting production, to show why the statement should not or cannot be produced. *See United States v. Augenblick,* 393 U.S. 348, 355–56, 89 S.Ct. 528, 533–34, 21 L.Ed.2d 537 (1969) (government properly bears burden of explaining why statements under Jencks Act could not be produced); *Moore v. United States,* 353 A.2d 16, 19 (D.C.1974) (under Jencks Act burden of explaining why material can't be produced is on government).

---

3. On original submission, we looked to federal caselaw in interpreting language contained in Rule 614 *that was virtually identical* to the language contained in the Jencks Act. In this regard, we interpreted the portion of Rule 614(a) that refers to any statement "that relates to the subject matter concerning which the witness has testified." The Jencks Act refers to any statement "which relates to the subject matter as to which the witness has testified."

4. The majority on rehearing criticizes the reliance by the Court on original submission on *United States v. Roark,* 924 F.2d 1426 (8th Cir. 1991), "because *Roark* did not address the mean-

ing of 'in the possession of the United States' for Jencks Act purposes." This criticism is puzzling because the Court on original submission did not rely on *Roark* for that proposition. The Court on original submission looked to *Roark only* in interpreting the portion of Rule 614 which requires that the statement "relate[] to the subject matter concerning which the witness has testified." *Jenkins v. State,* 912 S.W.2d 793, 802 (Tex.Crim. App.1993); *see also* n. 4, supra. Ground two of the State's motion for rehearing complained of our interpretation on original submission of this portion of Rule 614, but that ground was not granted.

*Jenkins v. State,* 912 S.W.2d 793, 823 (Tex. Crim.App.1993).

The State complains on rehearing that it is the defendant's burden to establish that the statement is in possession of the government. The State further contends that only when the defendant establishes that the statement is in the possession of the government does the burden fall on the government to show why the statement cannot be produced. The majority's opinion on rehearing does not address this complaint or, under its new holding, indicate who bears the burden of showing that the statement is or is not in the possession of the government and/or that it can or cannot be produced.

While the Court on original submission did not expressly address who should bear the burden of showing that the statement is possession of the witness, it held that the party contesting production bears the burden of showing why the statement cannot be produced. It is not unreasonable that the party contesting production also shoulder the burden of showing that the statement is not in the possession of its own witness. It makes little sense for the party seeking production from an adverse witness to bear the burden establishing whether or not that witness has the statement.

### II.

Although the State's fourth ground for rehearing was also granted, the majority's sustaining of the third ground apparently eliminated any necessity of addressing that ground.[5] Because I would overrule the third ground for rehearing, it is appropriate that I also address the State's fourth ground.

The State has obtained copies of the reports at issue, filed them with the trial court and included them with its Motion for Rehearing, along with a Motion to Abate. The State argues that if its other grounds for rehearing are overruled, it is at least entitled to an abatement of the case so that the trial court can include the documents in the record and determine whether their exclusion was prejudicial. The State contends that some federal courts have done this in the context of the Jencks Act and that this Court has acted similarly in other contexts.

I would first point out that at trial appellant urged production of the documents for purposes of appeal, but that request was denied. Now the State has obtained the reports and urges that they be made a part of the record. While admittedly, this Court permits abatement in certain instances (bill of exceptions, *Batson,* competency hearing), abatement has not been used in the context of the *Gaskin* rule and I do not think it appropriate here. *See, e.g., Zanders v. State,* 480 S.W.2d 708, 710–11 (Tex.Crim.App.1972), *cert. denied,* 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 106 (1975) (where defendant denied opportunity to make statements under *Gaskin* rule available for appellate record so harm can be determined, harm is presumed); *White v. State,* 496 S.W.2d 642, 646 (Tex. Crim.App.1973). To allow abatement where the trial court has failed to compel production of documents under Rule 614 will eliminate any hope of enforcing the rule in the future. Parties will refuse production or trial courts will not compel production in favor of dealing with a harmless error analysis at a later date, assuming the error was properly preserved.

For these reasons, I would overrule the State's grounds for rehearing and adhere to the Court's opinion on original submission.[6]

BAIRD, J., joins.

---

5. The majority acknowledges the granting of grounds three and four, sustains ground three, and never addresses ground four.

6. Prior to trial, appellant filed a motion entitled *Defendant's Request that State's Witnesses Bring With Them Any and All Reports that the [sic]*

*Made or Utilized in Forming the Basis of Their Testimony at the Punishment Phase of This Trial.* The Motion requested, in part, that the trial court order the State to

[i]nstruct any and all of their witnesses to bring to Court with them at the punishment

phase of this case ALL REPORTS, RECORDS, WRITINGS and RECORDINGS of any kind that they made in connection with the subject matter of their testimony at the trial of the defendant's punishment in this case.

The Motion was granted on the same day it was filed. In addition to his other complaints, appellant complains the trial court's ruling was contrary to this motion. On original submission, the Court noted that since it was disposing of the case on the basis of Rule 614, it need not address appellant's contentions with respect to his motion. Since the majority now overrules appellant's contentions with respect to Rule 614 and his constitutional claims it should address appellant's specific contentions respecting his motion.