Affirmed and Opinion filed November 9,
2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00412-CR



Eddie Shaw, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 230th District Court

Harris County, Texas

Trial Court
Cause No. 1175985



 

OPINION

A jury convicted appellant Eddie Shaw of one count of
aggravated sexual assault of a child under the age of fourteen and assessed
punishment at life imprisonment and a $10,000 fine.  Appellant challenges his
conviction in six issues.  He argues that the trial court erred by admitting
irrelevant testimony about the complainant’s conduct after the abuse,
permitting the complainant’s school principal to testify as an outcry witness,
admitting DNA evidence without the necessary proof of the chain of custody, and
allowing an expert to testify about the DNA evidence in this case.  Finally, he
argues that the evidence is legally and factually insufficient.  We affirm.

Background

When Jane[1] was seven or
eight years old, appellant moved in to the townhouse where Jane lived with her
mother and two-year-old sister.  Soon thereafter, appellant sexually assaulted
Jane, who testified at trial about the details of the assault.  Jane testified
that when her mother was taking a bath one night, appellant took Jane into a
laundry room, unzipped his pants, and showed her his penis.  He then pulled
down Jane’s pants, brought her into the foyer area of the house, and got on top
of her.  He put his penis inside her vagina.  Jane said that it hurt, and she
tried to scream, but he told her to stop.  Appellant said he would kill her mother
and sister if she ever told anyone what happened.  Jane remembered that semen
came out of his penis when he was putting his pants back on.  She was bleeding
from her vagina, so she threw away her underwear that night.

The next day, Jane told her mother that appellant
touched her and did things he should not have done.  Her mother did nothing,
and appellant continued to have vaginal or oral sex with Jane nearly every day
until she was about ten or eleven years old.  When Jane was eleven years old, her
mother took her to a doctor and discovered that Jane was six-and-a-half months
pregnant.  Jane told her mother, “[Appellant] is the one that got me pregnant,”
but no report was made to authorities.

Jane gave birth to a baby boy when she was eleven
years old, and she retained custody of her son.  Jane’s mother told Jane to
tell the doctors that a boy named John at her elementary school impregnated
her.  About eighteen months after Jane’s son was born, appellant resumed
sexually assaulting her.  By this time, Jane’s mother had also given birth to at
least one of appellant’s four biological daughters, and the family was living in
and out of various hotel rooms.  Appellant would have vaginal and oral sex with
Jane while her mother would take baths and the other children were present in
the hotel room.  This routine continued for about another year.  Jane testified
that, in total, appellant had sex with her hundreds and possibly a thousand
times.

Shortly after her fourteenth birthday, Jane and her
son moved in with her maternal grandmother.  Jane began attending school and
was enrolled in a teen parenting program.  One day she was in a fight at school
and was sent to an assistant principal’s office.  Shannon Fisch, the assistant principal,
testified at trial as an outcry witness.  Fisch said Jane told her that Jane
had been raped by her mother’s boyfriend, and her son was the offspring of that
assault.  That night, Jane also told her grandmother about the assault and that
appellant was the father of her child.  Her grandmother took her to a police
station, and they made a report.

The State presented testimony from various persons
involved in the investigation.  Officer Heidi Ruiz worked at the Houston Police
Department (HPD) Children’s Assessment Center, and she investigated this case. 
She testified generally about how children disclose to adults that they have
been sexually abused, and she said that children often “cry out” to multiple
adults because they are not ready to disclose every detail of the abuse the
first time they tell someone.  Over appellant’s objection, Ruiz was permitted
to testify that Jane’s “actions were appropriate in this case.”   Ruiz based
her conclusion on her experience working with children for ten years and her
observation of how children disclose these types of offenses.

Ruiz further testified that she collected buccal
swabs of DNA from Jane and Jane’s son.  She brought the swabs to an HPD
property room.  Officer Carlos Valera similarly testified that he collected
buccal swabs from appellant and delivered them to an HPD property room.  Cassandra
Pope, an employee at an HPD crime lab, testified that she received the buccal
swabs from the property room and transported them to the lab.  Karen Gincoo, an
employee at the crime lab, testified that she inventoried some of the buccal
swabs and sent them via FedEx to Orchid Cellmark, a forensic DNA testing
laboratory in Tennessee, because the HPD crime lab did not perform paternity
testing.

Tabitha Bullock, a DNA analyst at Orchid Cellmark,
also testified at trial.  After a hearing outside the jury’s presence, the
trial court found her qualified to testify as an expert.  The State introduced
the actual DNA samples taken from appellant, Jane, and Jane’s son, and
appellant’s counsel objected because the State had failed to establish the
chain of custody.  The court overruled the objection and admitted the DNA
samples.  Bullock prepared a report based on her testing of the DNA samples, which
showed that there was a 99.99% probability that appellant was the father of
Jane’s child.

The jury found appellant guilty and assessed
punishment at life imprisonment and a $10,000 fine.  This appeal followed.

Analysis

A.               
Officer Ruiz’s Testimony Regarding Jane’s Outcry Actions

Appellant argues in his first issue that Ruiz’s
testimony about Jane’s outcry actions being “appropriate” was irrelevant and did
not assist the trier of fact because it improperly bolstered Jane’s testimony
as “a direct opinion on the truthfulness of a child.”  Yount v. State,
872 S.W.2d 706, 708 (Tex. Crim. App. 1993) (quotation omitted); see Tex. R. Evid. 702.  Ruiz testified
generally about how a child sex abuse victim will often “cry out” to more than
one person “[b]ecause children are not ready to talk about every aspect of a
sex offense until they are actually comfortable that they are not going to be
abused by the perpetrator again.”  The State asked Ruiz whether she believed
Jane’s “actions were appropriate in this case,” and appellant objected based on
“relevance.”  The court overruled the objection, and Ruiz said, “Yes.” [2]

We review a trial court’s decision to admit evidence
for an abuse of discretion, and we will reverse only when the court’s decision
falls outside the zone of reasonable disagreement.  Burton v. State, 230
S.W.3d 846, 849 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  Rule 401 of
the Texas Rules of Evidence defines relevant evidence as “evidence
having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.”  Tex. R. Evid.
401.  In a case involving the sexual abuse of a child, a fact of consequence to
the determination of the action includes whether the child was actually
abused.  See Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). 
Evidence of abuse is relevant if it “corroborates another witness’[s] story or
enhances inferences to be drawn from another source of evidence.”  Id.
at 820.  Accordingly, testimony is relevant if the witness explains that
certain behavior is consistent with sexual abuse and the child in question has
exhibited such behavior.  Yount, 872 S.W.2d at 708–09; Cohn, 849
S.W.2d at 819.  Specifically in Cohn, the Court of Criminal Appeals held
that expert testimony was relevant when the expert said that the child “was appropriate
with her feelings about what happened” because she was crying and appeared
nervous.  849 S.W.2d at 818 (emphasis added).  Furthermore, although a direct
opinion on the truthfulness of a child is inadmissible under Rule 702 because
it does not assist the trier of fact, testimony about the behavior of child sex
abuse victims is admissible under Rule 702.  Yount, 872 S.W.3d at 709; Cohn,
849 S.W.2d at 818; see also Tamplin v. State, No. 14-01-01253-CR,
2002 WL 31662560, at *3 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (not
designated for publication) (noting that “testimony concerning behavioral
characteristics typically exhibited by victims of sexual abuse and describing
behavior observed in complaining witnesses is not improper.”).  

Here, evidence at trial showed that Jane cried out to
multiple persons, including her mother, her grandmother, and a school principal. 
Based on her experience, Ruiz explained that sexually abused children often cry
out to multiple persons, and thus, Jane’s actions were “appropriate.”  This
evidence enhances an inference drawn from the fact that Jane cried out to
multiple adults, and therefore, makes it more probable that Jane was sexually
assaulted.  Ruiz’s testimony was about the behavior of a child sex abuse
victim; she did not provide a direct opinion on whether Jane was telling the
truth or was a credible witness.[3]
 Accordingly, the trial court did not abuse its discretion in admitting Ruiz’s
testimony—it was relevant and assisted the trier of fact.  We overrule
appellant’s first issue.

B.                
Admission of Fisch’s Outcry Testimony

Appellant argues in
his second issue that the trial court erred in designating Fisch, the assistant
principal, as an outcry witness under article 38.072 of the Texas Code of
Criminal Procedure.  In a case alleging aggravated sexual assault of a child, a
witness’s hearsay testimony about a child’s statement is admissible if the
following requirements are met: (1) the statement describes the alleged offense;
(2) the statement was made by the child against whom the offense was allegedly
committed; (3) the witness is the first person, eighteen years of age or older,
other than the defendant, to whom the child made the statement; (4) the party
intending to offer the statement provides notice at least fourteen days before
the proceeding begins, and the notice includes the name of the witness and a
summary of the statement; (5) the trial court finds, in a hearing outside the
jury’s presence, that the statement is reliable based on the time, content, and
circumstances of the statement; and (6) the child testifies or is available to
testify at the proceeding.  Tex. Code
Crim. Proc. Ann. art. 38.072, § 2 (West Supp. 2009).  If, as here, a
defendant objects based on hearsay, the State bears the burden of proving each
element of the statute.  Zarco v. State, 210 S.W.3d 816, 828 (Tex.
App.—Houston [14th Dist.] 2006, no pet.).  If the trial court overrules the
objection, we will infer the court found that the State met its burden.  See
id. at 831 (holding that the trial court “impliedly found the testimony
reliable” when it overruled the defendant’s general hearsay objection).  We
review the trial court’s decision for an abuse of discretion, and we will
reverse only when the court’s decision falls outside the zone of reasonable
disagreement.  Id. at 830.

The only argument appellant makes on appeal regarding
the court’s admission of Fisch’s outcry testimony is that appellant’s mother,
rather than Fisch, was the first person, eighteen years of age or older, to
whom Jane made a statement describing the offense.[4]  It is
undisputed that Jane first told her mother about the abuse, but the State
argues that Jane did not disclose sufficient details to her mother to describe
the alleged offense.  See Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim.
App. 1990).  The indictment in this case alleged that appellant committed the
offense of aggravated sexual assault of a child by intentionally or knowingly causing
the penetration of Jane’s sexual organ.  See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West 2000).

A child’s description of the alleged offense “must be
more than words which give a general allusion that something in the area of
child abuse was going on.”  Garcia, 792 S.W.2d at 91.  The evidence must
clearly show that the victim described the alleged offense to the witness.  Id. 
At the time of the hearing to determine if Fisch was a proper outcry witness,
the only evidence before the court about what Jane told her mother came from
Jane’s testimony on direct examination.  Jane said that she told her mother,
“[Appellant] is the one that got me pregnant.”  Although this statement may
raise an inference of penetration, it does not clearly describe the alleged
offense that appellant penetrated Jane’s sexual organ.  Compare Thomas
v. State, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, no pet.)
(holding that the child did not describe the offense of aggravated sexual
assault when the child said appellant touched her private areas), Carty v.
State, 178 S.W.3d 297, 300–01, 306 (Tex. App.—Houston [1st Dist.] 2005,
pet. ref’d) (holding that the child did not describe the offense of penetrating
the child’s sexual organ when the child said appellant was molesting her), and
Castelan v. State, 54 S.W.3d 469, 475 (Tex. App.—Corpus Christi 2001, no
pet.) (holding that the child did not describe the offense of aggravated sexual
assault when he said the defendant “put his thing in through the back”), with
Nino v. State, 223 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007,
no pet.) (holding that the child described the offense of aggravated sexual
assault when he said the defendant “made me suck it” and pointed to his penis),
and Reed v. State, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet.
ref’d) (holding that the child described the offense of indecency with a child
when the child said the defendant touched her between the legs and underneath
her bathing suit).  The trial court had “broad discretion” to determine who was
a proper outcry witness, see Garcia, 792 S.W.2d at 92, and we cannot say
it was outside the zone of reasonable disagreement to conclude that Fisch was
the outcry witness.

Nonetheless, any error in admitting Fisch’s statement
would be harmless in this case.  The admission of inadmissible hearsay
testimony under article 38.072 is nonconstitutional error, and we will consider
it harmless if we are reasonably assured that the error did not influence the
verdict or had only a slight effect.  See Nino, 223 S.W.3d at
754; Chapman v. State, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th
Dist.] 2004, pet. ref’d) (citing Garcia v. State, 126 S.W.3d 921, 927
(Tex. Crim. App. 2004)); see also Tex.
R. App. P. 44.2(b).  Accordingly, if the same or similar evidence is
admitted without objection at another point in the trial, the error is
harmless.  Nino, 223 S.W.3d at 754 (citing Mayes v. State, 816
S.W.2d 79, 88 (Tex. Crim. App. 1991)).  Here, Fisch’s description of Jane’s
statement to the jury was not substantial: “[Jane] had told me that she was
raped by her mother’s boyfriend, and she did have a child at that time who was
three years old . . . .”  On the other hand, Jane testified in great detail
about the repeated sexual abuse she endured.  In particular, she testified
about the first time appellant penetrated her vagina with his penis, causing
her pain and bleeding.  She also testified that appellant was the father of her
baby.  Paternity testing evidence showed a 99.99% probability that appellant
fathered Jane’s child.  We are reasonably assured that Fisch’s testimony did
not influence the verdict or had only a slight effect.  Thus, any error in
admitting the statement was harmless.  We overrule appellant’s second issue.

C.               
Chain of Custody of DNA Evidence

In appellant’s third issue, he argues that the trial
court erred when it admitted the DNA evidence because the State failed to establish
a complete and proper chain of custody.  Specifically, he argues that a number
of unnamed witnesses “who may have had contact with the DNA samples” did not
testify, one named witness who handled the evidence did not testify, and there
was insufficient evidence “tracing the delivery and receipt of the FedEx
packages” from HPD to Orchid Cellmark.

Appellant has not shown any evidence of tampering or
impropriety, and “[w]ithout evidence of tampering, most questions concerning
care and custody of a substance go to the weight attached, not the
admissibility, of the evidence.”  Lagrone v. State, 942 S.W.2d 602, 617
(Tex. Crim. App. 1997); accord Caddell v. State, 123 S.W.3d 722, 727
(Tex. App.—Houston [14th Dist.] 2003, pet. ref’d) (“Objections regarding
theoretical or speculative breaches in the chain, without affirmative evidence
of impropriety, go to the weight of the evidence rather than to its
admissibility.”).  The State need only prove the beginning and end of the chain
of custody; it need not show a “moment-by-moment account of the whereabouts of
evidence from the instant it is seized.”  Reed v. State, 158 S.W.3d 44,
52 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d); accord Caddell,
123 S.W.3d at 727; Porter v. State, 969 S.W.2d 60, 66 (Tex. App.—Austin
1998, pet. ref’d).

Here, there was testimony about the beginning of the
chain: Officers Ruiz and Valera said they collected the buccal swabs and
delivered them to the HPD property room.  There was also testimony from the
middle of the chain: Pope said she brought the swabs to the crime lab, and
Gincoo said she sent swabs to Orchid Cellmark in Tennessee via FedEx.  Finally,
there was testimony about the end of the chain: Bullock said that Orchid
received the FedEx package, and she analyzed the DNA on the swabs.  Further, the
various packages and envelopes containing the swabs included the initials of
people who handled the swabs.  Although appellant suggested to the jury that
the swabs may have been handled in a way that could degrade the DNA, he has
provided no argument that there was any tampering or impropriety.  We overrule
appellant’s third issue.

D.               
Bullock’s Expert Testimony Regarding Paternity Testing

Appellant argues in his fourth issue that the trial
court erred in allowing Bullock to testify as an expert.  Specifically,
appellant argues that the trial court erred in admitting Bullock’s testimony
without first making a finding that the testimony was reliable.  Because
appellant did not request that such a finding be made, object to the trial
court’s failure to do so, or object to the testimony on the basis that it was
not reliable, we hold that this issue was not preserved.

            To preserve error
for appellate review, the record must show that the party made a specific
objection on the record and received an adverse ruling on that objection.  See
Tex. R. App. P. 33.1(a); Turner
v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991).  To make a specific
objection, a party must “let the trial judge know what he wants, why he thinks
himself entitled to it, and . . . do so clearly enough for the judge to
understand him at a time when the trial court is in a proper position to do
something about it.”  Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim.
App. 1992).  Notwithstanding a party’s failure to make a specific objection,
error will be preserved if a specific objection was apparent from the context. 
See Tex. R. App. P.
33.1(a)(1)(A); see also Tex. R.
Evid. 103(a)(1).

            A party may
challenge expert testimony on at least three specific grounds.  First, a party
may allege that the witness does not qualify as an expert because the witness
lacks the requisite knowledge, skill, experience, training, or education in the
subject matter of the expert’s testimony.  Vela v. State, 209 S.W.3d
128, 131 (Tex. Crim. App. 2006); see Tex.
R. Evid. 702.  Second, a party may allege that the subject matter of the
testimony is inappropriate because it is unreliable.  Vela, 209 S.W.3d
at 131, 133–34; see Tex. R. Evid.
705(c); Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App.
1992).  Third, a party may allege that the testimony will not assist the fact
finder in deciding the case.  Vela, 209 S.W.3d at 131; see Tex. R. Evid. 401, 702.  Respectively,
these three requirements of expert testimony are commonly referred to as (1)
qualification, (2) reliability, and (3) relevance.  Vela, 209 S.W.3d at
131.  The three requirements raise distinct questions and issues, and an
objection based on one of these requirements does not preserve error as to
another.  Turner v. State, 252 S.W.3d 571, 584 n.5 (Tex. App.—Houston
[14th Dist.] 2008, pet. ref’d) (holding that an objection based on the expert’s
qualifications did not preserve the reliability issue).  Similarly, if a party
objects to expert testimony without identifying one or more of these issues, no
error is preserved for our review.  Gregory v. State, 56 S.W.3d 164, 182
(Tex. App.—Houston [14th Dist.] 2001, pet. dism’d) (holding that “[o]bjections
based simply on Rule 702 and Daubert alone” are general objections that
do not preserve error).

In addition to challenging an expert on the three
grounds discussed above, a party in a criminal case has a procedural right to voir
dire an expert under Rule 705(b) of the Texas Rules of Evidence.  Under this
rule, a trial court must grant a party’s request “to conduct a voir dire
examination directed to the underlying facts or data upon which the opinion is
based,” and this examination is conducted outside the presence of the jury.  Tex. R. Evid. 705(b).  The purpose of
this examination is twofold: (1) it allows the defendant to determine the
foundation of the expert’s opinion without the fear of eliciting inadmissible evidence
in the jury’s presence, and (2) it may supply the defendant with “sufficient
ammunition to make a timely objection to the expert’s testimony on the ground
that it lacks a sufficient basis for admissibility.”  Goss v. State, 826
S.W.2d 162, 168 (Tex. Crim. App. 1992); see also Tex. R. Evid. 705(c) (“If the court determines that the
underlying facts or data do not provide a sufficient basis for the expert’s
opinion under Rule 702 or 703, the opinion is inadmissible.”).

A party’s argument that the trial court failed to
conduct a properly requested Rule 705(b) hearing is a distinct argument from
one challenging the qualifications of an expert.  See Jenkins v. State,
912 S.W.2d 793, 814 (Tex. Crim. App. 1993); see also Gharhemani v. State,
No. 14-06-00729-CR, 2007 WL 3146723, at *5, *8 (Tex. App.—Houston [14th Dist.]
Oct. 30, 2007, pet. ref’d) (mem. op., not designated for publication)
(addressing separately the issues of whether the expert was qualified and
whether the court improperly denied appellant’s request for a Rule 705(b)
hearing).  Thus, an objection based on an expert’s lack of qualifications does
not preserve for our review the issue of whether the court erred in denying a
proper request for a Rule 705(b) hearing.  Jenkins, 912 S.W.2d at 814.

Here, appellant filed a pretrial “request for a Rule
705(b) hearing,” in which he requested “before the State puts on any witness
from which it expects to solicit [expert] testimony . . . , a hearing be held
outside the hearing of the jury pursuant to Tex. R. Evid. 705(b) to determine
the admissibility of that testimony.”  There was no pretrial ruling on this
motion.  When the State called Bullock to testify at trial, appellant again
requested a “705 hearing.”  There was a discussion off the record, and then the
court retired the jury and allowed counsel for both parties to ask Bullock
questions.  The court never denied appellant’s request for a Rule 705(b)
hearing on the record, nor did the court limit the scope of this hearing. 
During the hearing, both parties asked Bullock questions primarily about her
qualifications, rather than anything about the data underlying her conclusions
or the reliability of her paternity testing.  Appellant asked two questions—one
about Bullock’s continuing education and another about her publications.  When
appellant’s counsel said, “I have no further questions,” the court said, “Your
objection is overruled.  She is qualified to testify.”

Nowhere in the record do we see an objection to the
reliability or relevance of Bullock’s testimony, and the context provided by
the hearing outside the jury’s presence does not suggest that appellant
objected on either of these grounds.  Although there was no objection on the
record to Bullock’s qualifications, it may be apparent from the context that
appellant objected on this ground because those were the type of questions both
parties asked Bullock and the court specifically overruled an “objection” and
said Bullock was “qualified” to testify.  See Martin v. State, 246
S.W.3d 246, 258–59 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (looking to
the trial court’s statement admitting expert testimony to determine the context
of an objection alleging that an expert was testifying “outside his range”).

But appellant does not argue on appeal that Bullock
was unqualified.  Rather, he argues that the court erred when it held an
“abbreviated” and “truncated” Rule 705 hearing “restricted to the
qualifications of the witness without requiring the State of Texas to establish”
the reliability of Bullock’s testimony.  The record does not show, however,
that the trial court denied appellant’s request for a Rule 705 hearing.  In
fact, it held a hearing outside the jury’s presence.  If the court
impermissibly limited this hearing in scope, it was appellant’s duty to bring
this issue to the trial court’s attention and show error in the record.  See
Ortiz v. State, 144 S.W.3d 225, 230 (Tex. App.—Houston [14th Dist.] 2004,
pet. ref’d) (en banc) (unanimous decision) (explaining that an appellant bears
the “burden of developing a sufficient record in the trial court to demonstrate
reversible error on appeal”).  Further, appellant never objected to the
reliability of Bullock’s testimony.  Without such an objection, the State was
not required to prove the reliability of Bullock’s testimony, nor was the court
required to hold the State to its burden of proof.  See E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995) (“Once the
party opposing the [expert testimony] objects, the proponent bears the burden
of demonstrating its admissibility.”); 2 Steven
Goode et. al, Texas Practice: Guide to the Texas Rules of Evidence §
702.7, at 73–74 (3d ed. 2002) (“Once an objection is made, the proponent of the
testimony bears the burden of demonstrating its reliability.”).  Finally, the
implied objection based on Bullock’s qualifications did not preserve error
related to the reliability of Bullock’s testimony or the court’s alleged
failure to hold a Rule 705(b) hearing.  See Jenkins, 912 S.W.2d at 814
(holding that no Rule 705(b) voir dire issue was preserved when the appellant
objected to the expert’s qualifications); Stewart, 995 S.W.2d at 258
(holding that no reliability issue was preserved when the appellant objected to
the expert’s qualifications).

Accordingly, because appellant’s fourth issue was not
preserved, it is overruled.

E.                
Sufficiency of the Evidence

In his fifth and sixth issues, appellant argues that
the evidence is legally and factually insufficient to support his conviction.  While
this appeal was pending, the Court of Criminal Appeals held that only one
standard should be used to evaluate the sufficiency of the evidence in a
criminal case: legal sufficiency.  Brooks v. State, — S.W.3d —, No.
PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010) (plurality
opinion); id. at *22 (Cochran, J., concurring).  Accordingly, we review
the sufficiency of the evidence in this case under a rigorous and proper
application of the Jackson v. Virginia, 443 U.S. 307 (1979), legal
sufficiency standard.  Brooks, 2010 WL 3894613, at *11 (plurality
opinion).

When reviewing the sufficiency of the evidence, we
view all of the evidence in the light most favorable to the verdict to
determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Id. at *5. This court does not sit as a thirteenth
juror and may not substitute its judgment for that of the fact finder by re-evaluating
the weight and credibility of the evidence.  Id. at *7.  We defer to the
fact finder’s resolution of conflicting evidence unless the resolution is not
rational.  Brooks, 2010 WL 3894613, at *7 n.8, *11.  Our duty as a
reviewing court is to ensure that the evidence presented actually supports a
conclusion that the defendant committed the crime.  Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Appellant was charged with the aggravated sexual assault
of a child by intentionally or knowingly causing the penetration of Jane’s
sexual organ.  See Tex. Penal
Code Ann. § 22.021(a)(1)(B)(i).  Jane testified in detail how appellant
penetrated her sexual organ.  She said that she was seven or eight years old
“when he put his penis inside of my vagina.”  Appellant notes the contradictory
statement Jane made when she identified the father of her baby as an elementary
school student named “John.”  Appellant further notes that Jane’s outcry to her
principal was made only when Jane faced discipline for getting into a fight. 
But these arguments primarily concern Jane’s credibility as a witness, not the
sufficiency of the evidence.  The jury was free to weigh this evidence, and we
will not disturb the jury’s credibility determinations on appeal.  See
Brooks, 2010 WL 3894613, at *7.

Appellant also argues that the paternity testing
evidence does not satisfy the legal sufficiency standard because it rested on
several assumptions to reach the 99.99% probability of paternity.  We need not
decide whether a 99.99% probability of paternity alone is sufficient to convict
appellant because Jane’s testimony by itself was legally 

sufficient evidence.  See
Bargas v. State, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008,
no pet.) (holding the evidence sufficient despite the child victim’s “unsophisticated
terminology and rough time-frame of the event” and the lack of any other
evidence because the child provided a detailed account of the abuse).  The DNA
evidence was not necessary to convict appellant in this case.  See id. (“Moreover,
physical evidence is not required when, as in this case, the complainant
provides ample testimony to establish that a sexual assault occurred.”). 
Accordingly, the evidence was legally sufficient, and we overrule appellant’s
fifth and sixth issues.

Having overruled all of appellant’s issues, we affirm
the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges and Justices Yates and
Sullivan.

Publish — Tex. R. App.
P. 47.2(b).









[1]
To protect the privacy of the child complainant, we refer to the child by a
pseudonym.





[2]
For purposes of this appeal, we presume without deciding that an objection to
“relevance” preserves the alleged error that testimony does not assist the
trier of fact.  Initially, the Court of Criminal Appeals suggested that
relevancy under Rule 401 was a different inquiry from “assist the trier of
fact” under Rule 702.  See Morales v. State, 32 S.W.3d 862, 865 (Tex.
Crim. App. 2000) (noting the distinction between Rule 401 relevancy and the
“fit” requirement of Rule 702 and explaining that a trial judge must find that
“expert testimony meets both the Rule 401 and Rule 702 requirements”); Yount,
872 S.W.2d at 708–09 & n.4 (noting that the question of whether testimony
is helpful to a jury is a separate issue from relevancy); Cohn v. State,
849 S.W.2d 817, 819 & n.4 (Tex. Crim. App. 1993) (holding the testimony was
relevant under Rule 401 but noting “[w]hether that testimony was helpful to a
jury” under Rule 702 “may be another question”).  Still, recent opinions have
suggested that relevancy is distinct from the “assist the trier of fact”
requirement.  See Vela v. State, 209 S.W.3d 128, 130–31 (Tex.
Crim. App. 2006) (explaining that Rules 104(a), 702, and 401 provide the basis
for the three requirements that an expert be qualified and the testimony be
reliable and relevant).  Although the court in Vela distinguished the
Rule 702 “assist the trier of fact” requirement from the Rule 401 relevancy
requirement, it then stated that the “assist the fact-finder” requirement was
commonly referred to as the “relevance” condition.  Id. at 131
(describing the three conditions for expert testimony as qualification,
reliability, and relevance).  Thus, a party’s objection based on “relevance”
presumably would let the trial judge know that he or she wants the testimony
excluded because it does not assist the trier of fact (rather than, or in
addition to, the reason that it does not tend to make the existence of a fact
of consequence more or less probable).  See Lankston v. State, 827
S.W.2d 907, 909 (Tex. Crim. App. 1992) (explaining that to preserve error, a
party must inform the trial court “what he wants [and] why he thinks himself
entitled to it”).  We need not decide today whether an objection based on
“relevance” preserves for appeal the issue of whether expert testimony assists
the fact finder because appellant’s argument fails on the merits.





[3]
Prior to Ruiz testifying about how children cry out to multiple adults, Ruiz
testified about questions that can be asked of a child to help determine if the
child is telling the truth.  Appellant now argues that “[t]he juxtaposition of
the questions asking Officer Ruiz if there were safeguards / questions that
could determine the truthfulness of the child, with the officer’s responses
that the complainant’s actions in this case were appropriate, constitute the
‘functional equivalent’ of opinion testimony regarding the truthfulness of the
child complainant’s allegations.”  But appellant did not object to the
“truthfulness” testimony, and Ruiz never testified that anyone asked Jane these
questions.  The testimony immediately before the objected-to question was about
the action of a child telling multiple adults about abuse.  Further, Ruiz
testified about several different topics between the initial “truthfulness”
testimony and the statement that Jane’s actions were appropriate.  Appellant
did not preserve any error regarding the earlier testimony about how to
determine if a child is telling the truth.





[4]
Accordingly, we do not address the other statutory requirements, including the
issue of whether Jane’s statement to Fisch described the offense with
sufficient detail.  See, e.g., Hayden v. State, 928 S.W.2d 229,
231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d) (concluding that the
child’s statement to the first person did not describe the alleged offense
without addressing whether the statement to the second person was sufficient); Schuster
v. State, 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref’d)
(same); see also Zarco, 210 S.W.3d at 830–31 (addressing only the
elements of the statute that the parties disputed on appeal).